## Winthrop W. Chenery *vs.* John Z. Goodrich.

If the declaration in an action of tort sets forth certain transactions, and alleges that at the time thereof the plaintiff was doing business alone under the style of C. & Co., and the defendant, with intent to cause it to be believed that the plaintiff conducted fraudulently in these transactions, published a false and malicious libel concerning him, in which, as set forth, reference is made to the connection of C. & Co. with these transactions, but no reference to him by his individual name, it sufficiently alleges that the libel was intended to refer to the plaintiff, and states the cause of action in substantial conformity with the Gen. Sts. c. 129, §§ 2, 87.

The declaration in an action for libel alleged that the plaintiff entered a cargo at a custom house and delivered it to the storekeeper the next day for warehousing, paid the duties on some of the goods the day following, taking an order for them, and received them on this order two days later; that by law and usage the act of importing any part of the cargo was not complete till this last day, but by mistake the storekeeper gave him a receipt for the goods left in warehouse which stated that they were imported three days earlier; that, on his applying three months afterwards to withdraw them, a claim being set up that they were subject to double duties by reason of having been warehoused more than three months, he made a full and true presentation of the facts to the storekeeper who corrected his receipt; that he then paid the ordinary duties on the goods and received

a permit to withdraw them; but that the collector of customs some time later revoked this permit, and demanded the additional duties, which the plaintiff paid under protest; and that the libel was published to cause it to be believed that the plaintiff fraudulently induced the storekeeper to alter the receipt, and to bring the plaintiff into hatred, ridicule and contempt. *Held*, that these allegations did not set forth or imply any unlawful intent or act of the plaintiff himself, or any participation by him in the illegal purpose or doings of another.

Although a publication which holds a person up to contempt as culpable in his general conduct or character relates also to his acts in connection with an illegal transaction, it is nevertheless actionable, unless such acts necessarily involve moral turpitude or may fairly be held to affect his general character.

Tort for libel. The declaration alleged that on July 24, 1862, the plaintiff entered in one entry at the custom house in Boston, a cargo of rum, sugar and molasses, and on July 25 delivered it to the storekeeper for warehousing, but that it was not then deposited in the warehouse; that on July 26 the plaintiff paid the duties on the sugar and molasses, and received an order on the storekeeper for them, and on July 28 presented this order and received that portion of the cargo ; that, by law and usage, the act of importing any of said merchandise, or depositing it in the warehouse, was not completed until July 28, but that the storekeeper by mistake gave the plaintiff a receipt for the rum from which it appeared that the act of importing was completed on July 25; that the rum remained in the warehouse, and on October 28 the plaintiff made application to withdraw it therefrom; that the officers of the United States at first contended that it had remained in warehouse more than three months from the date of importation, and was therefore subject to double duty, but that the plaintiff denied that it had been in warehouse more than three months from the date of importation ; that the storekeeper, on a full and true presentation of the facts by the plaintiff, corrected his warehouse receipt so that it truly appeared that the date of importation was July 28, in accordance with the facts and with the usage in such cases; that the plaintiff made the usual withdrawal entry, paid the duties on the rum, and received a permit to withdraw it; but that on or about March 20, 1863, the defendant, who was then collector of customs for the port of Boston, revoked this permit and demanded payment of additional duties on the rum, which still

remained in the warehouse on storage; and that the plaintiff paid the same under protest and withdrew the rum from the warehouse.

It alleged that " at the time of these transactions the plaintiff was doing business alone, under the name and style of Chenery & Co.;" and further alleged that the defendant, afterwards, " with the intent to cause it to be believed that the plaintiff fraudulently induced the storekeeper to alter his said receipt, so as to avoid the payment of the additional duties on said rum, and to bring the plaintiff into hatred, contempt and ridicule, did publish in a certain book, a title-page whereof is in the words and figures following, to wit: ' Exposition of the J. D. & M. Williams Fraud, and of its Settlement; the Chenery & Co. Fraud, and Removal of Timothy B. Dix, and Hon. Samuel Hooper's Extraordinary Report Thereon, and Other Matters at the Boston Custom House. By J. Z. Goodrich, who submits the Whole as an Answer to all specific Charges against him, and a Vindication of his general Conduct and Policy as Collector,' a false and malicious libel concerning the plaintiff," containing the following passages :

" Chenery & Co. and Dix Case, and Mr. Hooper's Report. It is due to the public, if not to myself, that I explain another gross fraud, and the means by which men high in military and civil position have sought to justify it, and the parties to it, at the department. The Williams fraud was greater in amount, but the means employed were no worse.

" It was therefore necessary, under the law existing at that time, to show that the withdrawal on the 28th of October would not exceed three months from importation. This was done by allowing Chenery & Co. to state in their withdrawal entry of the rum on the 28th of October, that it was imported on the 28th day of July, and they did so state, although in the original entry on the 24th of July they had sworn, as the fact was, that it was imported on the 24th. Upon this altered and false return of the storekeeper, and their own false statement that the rum was imported on the 28th of July, Chenery & Co. were allowed to pay the single duty of fifty-nine cents a gallon, and withdraw

it, which they did. The additional duty was two thousand nin hundred and ninety-three dollars and sixty-six cents, and the whole purpose was to relieve them from the payment of this sum. There was no other conceivable motive or necessity for altering the return or making the false statement as to the time of importation, and Chenery & Co. and Dix were obliged to admit. and did admit, that such was the purpose.

" Chenery & Co. are especially inexcusable in persisting in representations so palpably false, eight months after the discovery of the fraud; and there is no way of accounting for it except upon the expectation that the secretary would adopt the conclusions and recommendations of Mr. Hooper's report, without much inquiry or examination.

" ' In regard to alterations of returns ' (I quote from Mr Hooper's report) ' by officers after they have been handed into the custom house, I am told that it is constantly occurring in regard to dates, marks, or other details where facts are incorrectly stated.' There is not a circumstance to justify the assumption that the facts were incorrectly stated, and it is embar rassing to know how to characterize it. But, even if they had been incorrectly stated, Chenery & Co. should have sought a remedy in another way. But, the truth is, a correct return was pretended to be incorrect, and thus a foundation was laid to correct a pretended inaccuracy, and the correction was made for a fraudulent purpose. If this is not to be classed among the gravest of custom house offences, then I do not know where to class it.

" Mr. Hooper says, ' Messrs. Chenery & Co. are gentlemen of high character.' I do not controvert this; but men of high character, even, have no right to defraud the government in the way they attempted to.

" I should like to see the merchant who has been ready to disclose the exact truth and conform to the requirements of the law who has had any difficulty with me. Quite too much stress has been laid on the want of commercial experience. How could more commercial experience have aided me in dealing with the Williams and Chenery frauds ? They were simple and

pure frauds, but no more difficult to comprehend because they occurred in commercial transactions. Even less of a certain kind of commercial experience would have been of decided advantage in the cases I have related. The truth is, as I intimated at the commencement, the greater want is more commercial integrity."

The defendant filed a demurrer, setting up that the declaration did not state a legal cause of action substantially in accordance with the rules of law, and that it did not appear that the passages, cited therein as libellous, referred to, or were intended to refer to, the plaintiff; also that the alleged extracts were privileged statements and publications; and that they were not libellous. The questions raised by this demurrer were reserved for determination by the full court.

*E. Merwin*, for the defendant.

*P. W. Chandler & G. O. Shattuck*, for the plaintiff.

BIGELOW, C. J. In considering the several grounds of demurrer to the declaration in the present case, it is to be borne in mind that, under the rules of pleading established by statute in this Commonwealth, essential changes have been made in the forms of declarations at common law, especially in actions of tort brought for alleged slander and libel. Gen. Sts. c. 129, §§ 2, 87. The more material of these alterations in their bearing on the present case are, that innuendoes are no longer necessary, it being sufficient simply to aver that the alleged libellous or slanderous words were published or spoken of and concerning the plaintiff; and that the inducement or introductory matter, and the *colloquium*, including the reference to the inducement or prefatory statement, when it is necessary to an understanding of the alleged libellous or slanderous matter, are not required to be set forth with technical accuracy, but only in such manner as to make the words relied on intelligible to the court and jury in the same sense in which they were spoken or written.

It seems to us, in the light of these provisions, which were designed to abrogate the nice distinctions which the application of the strict rules of pleading at common law to declarations for slander and libel had created, that the first two grounds of demurrer insisted on at the bar are not tenable.

1. The first ground is, that it does not appear from the declarations that the plaintiff is referred to in the alleged libellous publication. This, if true, would be a valid cause of demurrer. But, on looking into the count, we think it is substantially set forth that the libellous matter had relation to the plaintiff, and to his acts and dealings in connection with the transaction stated in the inducement or prefatory averments which precede the alleged defamatory publication. It is distinctly averred that the plaintiff, at the time the acts were done as set forth in the preliminary statement, was doing business under the name of Chenery & Co. It is also averred that the defendant, with an intent to cause it to be believed that the plaintiff conducted fraudulently in the transaction previously stated, published the alleged libel of and concerning the plaintiff. These averments sufficiently connect the plaintiff with the facts recited in the preliminary part of the declaration and with those referred to in the alleged libel. It may be true that there is no such distinct allegation of the plaintiff's connection with the transactions set forth in the preliminary recital of facts, and with those referred to in the alleged libellous matter, as would have been necessary under the old rule of pleading. Such absolute precision of averment is no longer necessary. Applying to the declaration before us the test prescribed by the statute, we think it is made to appear not only that the plaintiff was the actor in a particular transaction which is substantially set forth, and that he conducted it under a certain name or style, but it is also made intelligible that the defendant by the alleged libellous publication intended to cause it to be believed that the plaintiff conducted fraudulently in such transaction, and published the alleged libel concerning the plaintiff with that intent. It seems to us that there is no doubt or ambiguity in the averments; that they are sufficient to an understanding of the words in the sense in which they were written and published; and that they substantially conform to the provisions of law regulating the pleadings in actions of this nature.

2. The second ground of demurrer is similar to that already considered, and must be disposed of on like grounds. It is

apparent, taking all the recitals and averments together, that the alleged libellous publication had reference to the matter as set forth in the previous part of the declaration, and that the intent and meaning of the language was to charge the defendant with the use of falsehood and fraud in relation to such matters with a design to deprive the government of a certain sum of money which was justly due for duties on the merchandise therein referred to.

3. The third ground of demurrer relates to matters of substance, and not to merely formal errors or defects. The objection is, that, taking all the facts set out in the declaration as true, and assuming that they relate to the plaintiff, and are intelligible as being connected together and as having reference to the conduct of the plaintiff in relation to one and the same transaction, nevertheless the publication is not actionable. This position rests on the familiar principle that a plaintiff cannot found an action upon any cause or subject matter which renders it necessary for him, in order to maintain the action, to prove that he was engaged in a violation of law. It is urged that the proper application of this principle to actions of slander and libel leads to the conclusion that no action will lie for defamatory words, either spoken or written, which merely relate to the conduct of a party while engaged in unlawful dealings or transactions. But we fail to see that this principle can be properly applied to the case stated in the declaration. The defendant's counsel seems to concede that to bring the case at bar within the rule it must appear from the averments that the publication was made concerning the plaintiff and his doings while he was knowingly participating in a transaction intended to accomplish a purpose forbidden by law. It seems to us, on an analysis of the allegations set forth in the declaration in connection with the preliminary statements, that they do not set forth any criminal or unlawful intent or act on the part of the plaintiff or any participation in the illegal purpose or doings of another. It is to be borne in mind that the question is not what the actual transaction was which took place between the plaintiff and the storekeeper and other officers of the United States in relation to the

entry and intended withdrawal of the merchandise referred to, but what it is stated to have been in the averments and statements of the declaration. Looking only at these, it is not alleged, nor does it appear by implication, that the plaintiff did any unlawful act, or participated in or connived at any transaction which he knew to be unlawful, or that he acted with any illegal intent whatsoever in relation to the matters set forth in the declaration. On the contrary, the averment is that the plaintiff made a correct and true statement of facts to the officers of the customs in accordance with what he believed to be the law and usage in relation to the subject matter referred to. But it is not alleged that the plaintiff altered any receipt, or connived at any false entry of goods, or fraudulently received any goods from the custody of the officer of the United States. Now, although it may be true that the alteration of the receipt was erroneous, and that by the true construction of the acts of congress the original date was correct, it by no means follows that the plaintiff was guilty of a violation of law in any such sense as to justify or excuse the defendant in holding him up in connection with the transaction to public hatred, contempt and ridicule.

But, if we are wrong in this view of the case, we are clearly of opinion that the action is maintainable on another ground. If the conduct of the plaintiff in connection with the transaction to which the publication relates was open to comment and criticism for the reason that he participated in acts which were contrary to law, and in consequence thereof no action can be maintained for a libellous publication which relates solely to the plaintiff's connection with such unlawful acts, nevertheless there is a limit beyond which such immunity from liability for defamatory words cannot be carried. Unless the matters set forth in a declaration are of a nature which indicates that the plaintiff's acts and conduct in connection therewith necessarily involved moral turpitude, or might fairly be held to affect his general character in any particular, a publication which held a party up to contempt and reproach as wanting in integrity or as otherwise culpable in his general conduct or character would be

actionable, although it might also relate to the plaintiff's participation in an illegal transaction. A person does not necessarily forfeit all legal claim to protection against defamatory matter affecting his character, because he has been guilty of a single illegal act. Now, although the plaintiff, acting on certain facts and in conformity to what he supposed to be the law and usage in similar cases, may have committed a violation of law, or participated in the illegal act of another, it by no means follows that his general character for commercial integrity and fair dealing was thereby forfeited, or so far affected that he could not maintain an action for a publication which held him up to the public as wanting in the qualities and characteristics of a merchant of integrity and honor. *Greville* v. *Chapman*, Dav. & Meriv. 552. Such we think was the fair import of a portion of the written words which are set forth in the declaration. For the publication of these this action can be maintained, although it may be also true that it appears from the declaration that the publication related to the plaintiff's conduct in a transaction which was unlawful. *Demurrer overruled.*