JERUSHA A. YOUNG vs. EDWIN P. COOK.

ELIZA H. HIGGINS vs. SAME.

Barnstable.　Jan. 19. — Feb. 24, 1887.　HOLMES & GARDNER, JJ.,
absent.

If the declaration in an action for slander avers that the alleged slanderous
words were spoken of the plaintiff, no innuendoes are necessary to apply
them, and the absence of such innuendoes does not render the declaration
demurrable.

The declaration in an action by Jerusha A. Young for slander, and the declaration
in another action by Eliza H. Higgins, also for slander, each alleged that the
plaintiff was a resident of the town of W.; that, on a day named, certain work-
men, who were engaged in digging on a road in W., discovered, buried in a bank
of earth, the body of a child, which had the appearance of having been murdered;
that the facts relative thereto were well known by the inhabitants of the town;
that "it then was the common belief of the town authorities and of said inhabit-
ants that said infant had been brutally murdered by some person or persons, and
had been surreptitiously buried in said bank of earth for the purpose of conceal-
ing the commission of the crime;" that "the defendant, with the intent to cause
it to be believed that the plaintiff was a party to the murder and burial of said
infant, and also with the intent to bring the plaintiff into hatred, contempt, and
disgrace, and also with the intent to incite and instigate criminal proceedings
against her, and thereby to cause her mental and physical suffering and great
pecuniary expense, and with the intent to injure her mentally and physically,
did, on divers times, in presence of divers persons, and in divers places, pub-
licly, falsely, and maliciously accuse the plaintiff of being a participant in the
murder and burial of said infant, by words spoken of and concerning the plain-
tiff, substantially as follows : ' That child is Aunt Jerusha's, and Eliza Higgins
took it away;' ' It is my opinion that Jerusha Young had that child, and Eliza
Higgins took it away;' 'In my opinion that child belonged to Aunt Jerusha,
and Eliza Higgins was her aid;' ' In my opinion Jerusha Young had that baby,
and Eliza Higgins buried it;' 'My boy told me that Liza Higgins had that
young one in her cellar two or three days, and he says that B. told him so;'"
and that, in consequence of the vile and slanderous statements of the defendant,
she became an object of suspicion to the authorities of W. and to the inhabitants
thereof, causing her great mental and bodily suffering and serious damage to
her reputation.　Held, that the declaration in each case was insufficient, in
failing to show how the alleged slanderous words imputed the commission of a
crime to the plaintiff.

TWO ACTIONS OF TORT.　The declaration in the first case
was as follows :

" The plaintiff says that she has been for a long time, and now
is, a resident of Wellfleet, in said county of Barnstable; that dur-
ing said time she has been held in great respect by the inhabit-
ants of said Wellfleet; that on or about March 12, 1886, certain

workmen engaged in digging on a certain street or road in said Wellfleet, discovered protruding from a bank of earth on which they were digging at the side of the road something which seemed to be the arm or leg of an infant; that thereupon, upon further digging, the body of a child of about the age of four days was then and there dug out of said bank of earth; that, upon investigation, then and there it appeared that a piece of folded cotton cloth had been tied around the neck of said infant so tightly as to strangle it, and that its head had been beaten in by some kind of an instrument; that at the time the defendant made the statements hereinafter set forth, the above facts relative to said infant were well known in said Wellfleet by all its inhabitants; and that it then was the common belief of the town authorities and of the said inhabitants that said infant had been brutally murdered by some person or persons, and had been surreptitiously buried in said bank of earth for the purpose of concealing the commission of the crime.

" The plaintiff further says, that neither before nor after the discovery of said infant did the defendant have any reasonable ground for believing, or expressing an opinion, that the plaintiff was the mother of said infant, or was in any way connected with the murder or burial of said infant, and as a fact the defendant did not have such an opinion or belief; notwithstanding all which the defendant, with the intent to cause it to be believed that the plaintiff was the mother of said infant, and was a participant in its murder and burial, and also with the intent to bring the plaintiff into hatred, contempt, and disgrace, and also with the intent to incite and instigate criminal proceedings against her, and thereby to cause her mental and physical suffering and great pecuniary expense, and with the intent to injure her mentally and physically, did, on divers times, in presence of divers persons, and in divers places, before the bringing of this writ, publicly, falsely, and maliciously accuse the plaintiff of being the mother of said infant, and of being a participant in its murder and burial, by words spoken of and concerning the plaintiff substantially as follows: ' That child is Aunt Jerusha's, and Eliza Higgins took it away.' ' It is my opinion that Aunt Jerusha had that child, and Eliza Higgins took it away.' ' In my opinion that child belonged to Aunt Jerusha, and Eliza Higgins was her aid.'

' In my opinion Jerusha Young had that baby, and Eliza Higgins buried it.'

" The plaintiff further says, that, in consequence of the vile and slanderous statements of the defendant as aforesaid, she became an object of suspicion to the authorities of said Wellfleet and to the inhabitants thereof, causing her great mental and bodily suffering and serious damage to her reputation. Wherefore she claims damages as alleged in her writ."

The declaration in the second case was the same as that in the first, with the additional allegation that the plaintiff " is the lawful wife of Solomon R. Higgins, likewise a resident of said Wellfleet, and is the mother of a family of children; " and that the defendant also spoke the following words of and concerning the plaintiff: " My boy told me that Liza Higgins had that young one in her cellar two or three days, and he says that Bart Oliver told him so."

The defendant demurred to the declaration in each case, assigning in the first case the following grounds of demurrer: " 1. It appears from said declaration that the words alleged to have been spoken by the defendant were spoken of one called Aunt Jerusha and one Jerusha Young, and not of Jerusha A. Young, and there is no allegation in the declaration that the plaintiff was ever known or called by the name Aunt Jerusha, or by the name of Jerusha Young, or both. 2. The words alleged to have been spoken by the defendant do not by their natural import, or as connected with the state of facts alleged as existing at the time of such speaking, charge the commission of any crime or misdemeanor whatever, and the plaintiff's declaration does not so allege. 3. The plaintiff's declaration does not allege that the defendant, at the time of the alleged speaking of slanderous words, or at any time, believed, thought, or suspected that the infant referred to in said declaration had been murdered. 4. There is no allegation in said declaration that said infant had been murdered."

The demurrer to the declaration in the second case differed from that in the first case only in the first ground assigned, which was as follows: " 1. It appears from said declaration that the words alleged to have been spoken by the defendant were spoken of one Eliza Higgins and one Liza Higgins, and not of Eliza H.

Higgins, and there is no allegation in the declaration that the plaintiff was ever known or called by the name of Eliza Higgins or Liza Higgins, or both."

The Superior Court sustained the demurrers, and ordered judgments for the defendant; and the plaintiffs appealed to this court.

*G. W. McConnell*, for the plaintiffs.

*J. M. Day*, (*T. C. Day* with him,) for the defendant.

DEVENS, J. The declarations set out that the defendant spoke of the plaintiffs respectively the words alleged as slanderous. They do not contain an allegation that the plaintiff Jerusha A. Young was intended by the words "Aunt Jerusha," or "Jerusha Young," or was known or called by either or both these names, or that the plaintiff Eliza H. Higgins was known also as "Eliza Higgins" or "Liza Higgins." The declarations are not, on this account, demurrable. When the words are alleged to be spoken of the plaintiff, no innuendoes are necessary to apply them, and, although the names of both plaintiffs are used in the words set out in each declaration, there can be no doubt as to which applied to one plaintiff, and which to the other.

If a plaintiff sets forth, as slanderous, words not intelligible themselves as charging an actionable offence, without further explanation or reference to facts understood but not mentioned, or parts of conversation not stated, the declaration must contain a concise and clear statement of such things as are necessary to make the words intelligible in the same sense in which they were spoken. Pub. Sts. *c.* 167, § 94.

It is necessary that words spoken, in order to be actionable, either of their own natural import, or by their connection with other facts or parts of the conversation in which they were uttered, should impute to a plaintiff the commission of a criminal offence. Such extrinsic circumstances as are necessary to give significance to the words as imputing a charge of crime must be alleged. The natural meaning of words cannot be enlarged by mere averments that the defendant charged thereby an actionable offence. *Tebbetts* v. *Goding*, 9 Gray, 254.

The words recited in the declarations do not of themselves import a charge of a crime committed by the plaintiffs, or either of them. The statement that the plaintiff Young had a child is

not connected with any allegation that she was an unmarried woman, nor is there anything in the declaration in the case in which she is plaintiff to show whether she was or not. It involved, therefore, no imputation upon her chastity. Nor do words which are set forth in both declarations as uttered by the defendant, that Eliza Higgins " took it [the child] away," that " that child belonged to Aunt Jerusha, and Eliza Higgins was her aid," that " Eliza Higgins buried it," nor the words set forth in the declaration of the plaintiff Higgins, " My boy told me that Liza Higgins had that young one in her cellar two or three days, and he says that Bart Oliver told him so," import of themselves any charge of crime. The plaintiff Higgins alleges that these words were uttered " with the intent to cause it to be believed that the plaintiff was a party to the murder and burial of said infant; " and those set forth in the declaration of Young are alleged by her to have been uttered with the intent to cause it to be believed that she was a participant in the murder and burial of the child. To have buried or aided in the burial of a dead child, or to have kept it two or three days before its burial, which the words charge, is not an imputation of a crime, and they do not of themselves import a charge of murder. It was necessary for the plaintiff to have alleged such facts and circumstances, or such a connection with the conversation in which they were uttered, as would show that the defendant, by the use of words innocent in themselves, made this charge.  *Goodrich* v. *Hooper*, 97 Mass. 1.  *Chenery* v. *Goodrich*, 98 Mass. 224.  *Brettun* v. *Anthony*, 103 Mass. 37.  *Snell* v. *Snow*, 13 Met. 278.  *Chace* v. *Sherman*, 119 Mass. 387.  *Riddell* v. *Thayer*, 127 Mass. 487.

The declarations wholly fail to show any connection which the words as uttered could have had that might cause them to be understood as involving this charge. It is indeed alleged that the body of an infant was found, under certain circumstances stated, in a bank of earth in Wellfleet; that the facts relative thereto were well known by the inhabitants of the town; and that there was " the common belief of the town authorities and of said inhabitants that said infant had been brutally murdered by some person or persons, and had been surreptitiously buried in said bank of earth for the purpose of concealing the commission of the crime." So far as the declarations show, the words were not

uttered in any conversation in which the crime was imputed or suggested by any one, nor had they any connection with any such imputation. They are not alleged to have been uttered to any person who knew the facts as to the finding of the body of the infant, or who participated in the common belief in Wellfleet that a murder had been committed. They are not even-alleged to have been uttered in the town of Wellfleet, where this alleged belief to some extent existed. Nor is there any allegation that the defendant knew of the existence of any belief among the people of Wellfleet that the child had been murdered, or that he spoke the words in connection with any such charge, or with reference to the existence of such a belief. While each declaration ascribes to the words a meaning that they do not of themselves bear, it alleges only that they were uttered at "divers times, in presence of divers persons, and in divers places." The declarations are insufficient, in failing to show, by a proper colloquium, in what manner and how the words imputed the commission of a crime to either of the plaintiffs.     *Judgments affirmed.*