(74 App. Div. 359.)

BROWN v. TRIBUNE ASS'N.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. LIBEL—SETTING OUT OBJECTIONABLE LANGUAGE—INNUENDO—EFFECT.

Where plaintiff in libel sets out the objectionable language, and follows it with an innuendo ascribing a certain meaning thereto, he is limited to the meaning so ascribed; and, if not libelous, there is no cause of action.

2. SAME—LIBELOUS LANGUAGE.

A newspaper article merely accusing a wife of having been the cause of her husband's suicide is not libelous.

Appeal from special term, New York county.

Action by Helene M. Brown against the Tribune Association. From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Henry W. Sackett, for appellant.
Otto H. Droege, for respondent.

McLAUGHLIN, J. Action to recover damages for an alleged libel. The complaint charges that on the 29th of May, 1901, the defendant maliciously published in its newspaper, of and concerning the plaintiff, the following article:

"The officials of the Mutual Life Insurance Company in this city were surprised at the news of the suicide of Alvah W. Brown, one of the agents of the company, on the Fall River boat Plymouth yesterday at Newport. Charles H. Raymond, the general agent, said that Mr. Brown had been for twenty years one of the trusted agents of the company. His father had also been an agent of the Mutual Life. The dead man was born in Brooklyn on July 2, 1854, and was graduated from Yale. He was financially successful, and had no domestic troubles, so far as the officials of the company know. Mr. Brown owned property in this city and in Hackensack, N. J. He was married and had a family. An officer of the company said that Mr. Brown's accounts were absolutely straight, and that he did not owe the company a dollar.

"At Mr. Brown's home, 141 West Eighty-Second street, Mrs. Brown (meaning the plaintiff herein) denied herself to all visitors. It was learned that Mr. Brown left the house on Monday morning without telling his wife that he was going out of town. He had been drinking heavily for two weeks, and the elevator boy at No. 46 Cedar street, where his office is, told Mrs. Brown (meaning the plaintiff herein) that her husband was intoxicated when he left the building on Tuesday at 2 o'clock.

"George A. Brinkerhoff, a relative, and an insurance agent at No. 149 Broadway, said yesterday afternoon that after Mr. Brown's graduation from Yale he entered the office of his father, Josiah T. Brown, one of the oldest agents of the Mutual Life Insurance Company, who had an office in lower Broadway. When his father died, about twelve years ago, Mr. Brown succeeded to the agency, and for some years has had an office at No. 46 Cedar street. His first wife died about three and one-half years ago. Two years ago he married a Mrs. Howe (meaning the plaintiff herein). Mr. Brown had not been in good health for some time, and that might have had something to do with his suicide.

"His first wife was the eldest daughter of Postmaster John T. Anderson, of Hackensack, where Brown was born and reared. Brown was popular in his native place, and was an enthusiastic horseman. He belonged to the Gentlemen's Driving Association, the Hackensack Golf Club, Oritani Field

¶ 1. See Libel and Slander, vol. 32, Cent. Dig. § 207.

Club, and the Hackensack Club. His mother and married sister live in Montclair. His relatives there blame his second wife (meaning the plaintiff herein), who was his first wife's nurse in her fatal illness, for his suicide."

And by the sixth paragraph it is alleged that the defendant, by the references contained in the article to the effect that "his relatives there blame his second wife (meaning the plaintiff herein), who was his first wife's nurse in her fatal illness, for his suicide," "intended to, and did, accuse this plaintiff of having caused the said Alvah W. Brown to commit suicide."

The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and from the interlocutory judgment thereafter entered, defendant has appealed.

The purpose of an innuendo in a pleading is to show the true meaning and intent of the words published, and when a plaintiff assigns a meaning he rejects every other meaning which might be ascribed to such words. He is limited to the meaning of the words as interpreted by himself, and a defendant is only called upon to plead to or defend upon the trial the meaning of the words alleged. If such meaning be not libelous, then the plaintiff has not stated a cause of action, even though the words, standing alone, might be libelous. Townsh. Sland. & Lib. (4th Ed.) p. 573; Butler v. Wood, 10 How. Prac. 222. The validity of the complaint, therefore, must be determined by the interpretation which the plaintiff herself has put upon the words published. As thus interpreted, the article charges that the plaintiff was the cause of her husband's suicide; but this, in and of itself, did not charge the plaintiff with the commission of any act of which she was guilty or for which she could be justly censured, and for the reason that she might be the innocent cause of it. In other words, the publication of an article to the effect that a wife is the cause of her husband's suicide, without any allegations of extrinsic facts to the effect that her acts were unjustifiable, is no more than saying that she was the occasion of his suicide, which charges nothing whatever that is even censurable as against her. Suppose a wife, by reason of brutal and inhuman treatment on the part of the husband, should refuse to cohabit or longer live with him, and by reason thereof he should commit suicide, or suppose, under such circumstances, that she should leave his house and institute in the courts an action for a separation, and by reason of that fact he should commit suicide; no one would contend, even though his relations might blame her, that she was censurable, even in the slightest degree. Therefore the mere allegation of the fact that the plaintiff caused her husband to commit suicide, without any other facts pleaded which tended to show that it was some guilty or unjustifiable act on her part, did not accuse her of any act which could injure her in any way (Ruel v. Tatnell, 43 Law T. [N. S.] 507; Miller v. Buckdon, 2 Bulst. 10; Peake v. Oldham, Cowp. 275; Young v. Cook, 144 Mass. 38, 10 N. E. 719), and manifestly for the reason that she might be the innocent cause of his condemnable act (Brettun v. Anthony, 103 Mass. 37). In the case last cited the charge was that the defendant burned his store, and the innuendo was that he burned it with the intent "to injure the

insurers thereof"; but this was held bad on demurrer, inasmuch as there was no allegation to the effect that defendant's act was actuated by a bad motive; that he might have carelessly or innocently burned the store; "that the act of burning one's own property becomes a crime only under special circumstances, as when done for the purpose of defrauding the insurers, or in violation of the provisions of the bankrupt act." See, also, Case v. Bulkley, 15 Wend. 327.

The principal case relied upon by the respondent (Bradley v. Cramer, 59 Wis. 309, 18 N. W. 268, 48 Am. Rep. 511) is not in point. There the article complained of, it is true, charged, among other things, that "the exactions of his wife are said to be prime factors in bringing about self-destruction"; but the appellate court, in reversing the judgment sustaining a demurrer to the complaint, did not place the decision upon these words alone. On the contrary, it held that the whole article, as published, was calculated to cast defamatory imputations upon the plaintiff; the court saying:

"The article purports to give the probable cause of the husband's suicide; the manner of his death; the nature and place of his employment; the capacity in which he was employed at the time, and by whom. It also states that the son was sent by the suicide's employer to Chicago, and all his expenses paid, while he learned the business, and that on the lad's return he was allowed a pretty good salary. Up to this point in the article, as stated by the counsel for the defendant, nothing is published of or concerning the plaintiff, but those statements serve to explain and make clear and unambiguous the balance of the article; for in construing it we must consider its whole scope and object, and then put such construction upon its language as would naturally be given to it. Thus construed, and the words employed in stating the methods which enabled the plaintiff to pocket a part of the wages of the son seem to be capable of the meaning ascribed to them in the accompanying innuendo; and, so construed, we find other features of the article which of themselves, in our judgment, tend to subject the plaintiff to some of the things which make the publication libelous upon its face, within the rules of the law above stated."

It will be observed that in the opinion no stress is laid upon or use made of the words "the exactions of the wife are said to be prime factors in bringing about self-destruction," and for that reason it is fairly to be inferred that the judgment would have been affirmed if there had been no other words in the article from which it could be said that the wife's guilty or unjustifiable acts were the cause of, or resulted in, the husband's suicide; and, if there had, it would not have been an authority, inasmuch as the word "exaction" is a stronger word and implies more than the word "caused," and manifestly for the reason already given, viz., that the word "caused" may have been an innocent one, so far as the wife is concerned.

For the reasons thus assigned, it follows that the judgment appealed from must be reversed, and the demurrer sustained, with leave, however, to the plaintiff to amend her complaint on payment of costs in this court and in the court below. All concur; INGRAHAM, J., in result.

Judgment reversed, with costs, and demurrer sustained, with costs, with leave to plaintiff to amend on payment of costs in this court and in the court below.