Baldwin v. Walser.

---

G. W. BALDWIN *et al.*, Appellant, v. G. H. WALSER, Respondent.

**Kansas City Court of Appeals, May 12, 1890.**

1. **Libel:** NOTICE OF DISSOLUTION OF PARTNERSHIP NOT ACTIONABLE: SPECIAL CHARACTER. The giving of notice by one not a member of a banking firm, that he had withdrawn from it and that it was no longer authorized to do business as far as he was concerned, was of itself harmless. To render language concerning one in a special character or relation actionable, it must touch him in that special character or relation, otherwise it must be adjudged by the rules which apply to language concerning an individual as such. It is not sufficient that such language disparage him or his reputation generally, it must be such as, if true, disqualifies or renders him less fit to properly fulfill the duties incident to the special character; such as, imputing fraud, want of integrity, or misconduct in the particular line, and occasioning pecuniary loss as a necessary or natural proximate consequence of its publication in writing; and even special damages will not make the language actionable if the words are not defamatory.

2.    ——— : ——— : EXTRANEOUS MATTER.  The allegations in the petition that, in consequence of the publication of said notice of dissolution of the partnership, a general loss of custom had resulted to plaintiffs, and many people were prevented from transacting business with them, and their commercial and financial standing were reduced, do not render the publication libelous.

3.    Partnership : ACTION AT LAW AGAINST PARTNERS.  Several partners cannot maintain an action at law for 'damages against a copartner.

4.    ——— : DISSOLUTION : DAMAGES.  A partner has a right to withdraw from the firm and make his withdrawal effectual by giving notice thereof, and, though serious loss to the firm may be the natural and probable result of such withdrawal, no damages could ordinarily be recovered therefor.

*Appeal from the Barton Circuit Court.*—Hon D. P. STRATTON, Judge.

AFFIRMED.

*Buler & Timmonds*, for appellant.

(1)  The demurrer admits the falsehood in the publication, and the malice in the publisher.  Townsend on Libel, note to p. 350 ; *Boogher v. Knapp*, 76 Mo. 457. The publications being admitted to be false, the malice of the publisher also being admitted, it cannot be, on demurrer, claimed as a privileged publication ; for, if false and malicious, it cannot be privileged.  Townsend on Libel, sec. 245.  " Privileged publication " is a matmer of defense only to be pleaded and proven as any other defense.  Townsend, sec. 208, *et seq.*, and sec. 245 ; 3 Sutherland on Damages, 653.  ( 2 )  The publication is libelous *per se*.  *Hermann v. Bradstreet Co.,* '19 Mo. App. 227 ; Townsend, secs. 146, 147, 150, 181, 182, 191, note on p. 279, notes on pp. 279, 298, 299.  ( 3 )  If the publication should be held not to be libelous *per se*, it is, nevertheless, libelous by reason of the special injuries and damages alleged in petition.  A general loss of customers is alleged.  Many people have been

prevented from transacting business with plaintiffs. The bank is greatly reduced in its commercial and financial standing. Loss of customers is so manifestly special damage that it is unnecessary to state the cases in detail. 3 Sutherland on Damages, p. 666, and cases cited, p. 667, and cases cited. *Weiss v. Whitlemore*, 28 Mich. 373. If the petition is not sufficiently specific as to injuries and damages, defendant's remedy would have been by motion to make more specific, definite and certain, and not by demurrer.

*R. J. Tucker* and *G. H. Walser*, for respondent.

(1) The demurrer only admits facts well pleaded, and does not admit the unwarranted applications in the innuendo, and statement outside of the matter complained of, not legitimately deduced from the wording of the publication. *Dannan v. Coleman*, 8 Mo. App. 595; *Kleekamp v. Meyer*, 5 Mo. App. 444; *Boogher v. Knapp*, 76 Mo. 457; *State ex rel. v. Evert*, 52 Mo. 95. (2) The publication complained of is not actionable *per se*. It raises no imputation of malice in the publication. It is simply a notice of a dissolution of a copartnership, " so far as the publisher was concerned." To make it actionable *per se*, its legitimate import must blacken the reputation of the appellants, or expose them to hatred, contempt or ridicule; or, if true, disqualify them, or unfit them, for business as bankers, for moral turpitude, want of skill, honesty or standing, as men. *Legg v. Dunlevy*, 80 Mo. 558; Townsend on Libel and Slander, sec. 190; *Fitzgerald v. Redfield*, 51 Barb. 484; Odgers on Libel and Slander, 65; *Nelson v. Margrave*, 10 Mo. 648; *Hermann v. Bradstreet Co.*, 19 Mo. App. 227; *Price v. Whitely*, 50 Mo. 439; *Legg v. Dunlevy*, 10 Mo. App. 461; *Brooker v. Coffin*, 5 Johns. 191; *Martin v. Sulwell*, 13 Johns. 275; *Rammel v. Otis*, 60 Mo. 35; *Fry v. Bennet*, 15 Sand. 54; *More v. Bennett*, 33 Howard, 177; *Bennett v. Williamson*, 4 Sand.

60; *More v. Bennett*, 48 Barb. 229. (3) Where the publication is not actionable *per se*, and where the ordinary meaning of the words does not convey the meaning assigned to them, the petition must contain a statement of extrinsic facts necessary to make a cause of action. *Curry v. Collins*, 37 Mo. 324; *Christal v. Craig*, 80 Mo. 357; *Wood v. Hilfish*, 23 Mo. App. 389; *Salvatillo v. Ghio*, 9 Mo. App. 155; Chitty's Pleadings [10 Am. Ed.] 400; *Legg v. Dunlevy*, 80. Mo. 558; *McMannis v. Jackson*, 28 Mo. 58; *Bunday v. Heart*, 46 Mo. 460; *Masley v. Mass*, 6 Gratt, 538; *Stewart v. Wilson*, 23 Minn. 449; *Tappen v. Wilson*, 7 Ohio, 193; Estee's Pleading, sec. 3635; *Maynard v. Ins. Co.*, 47 Cal. 210; *Wilson v. Fitch*, 41 Cal. 378. (4) The innuendo cannot enlarge or change the ordinary meaning of the language used. *Greeley v. Cooper*, 1 Denio, 347; *Tappen v. Wilson*, 7 Ohio, 194. (5) The plaintiffs, suing in the special character of private bankers, must show that it referred to them in the capacity in which they sue. Townsend on Libel and Slander, 290. (6) The petition, as a whole, shows that appellants and respondent were partners, and that the publication complained of related to them in their partnership capacity. One partner cannot sue another at law. Kelley's Treatise, 677, 678, 679; *Bank v. Bemis*, 55 Mo. 524. (7) A partner may dissolve the firm at pleasure. 3 Kent, Com. [12 Ed.] 53. (8) If a retiring partner wishes to protect himself from the mismanagement or liabilities of the old firm which he retires from, the law makes it his duty to give notice to the public of his withdrawal. *Dowzelot v. Rawlings*, 58 Mo. 75; 3 Kent, Com. [12 Ed.] 63. (9) The pleader must rely upon some specific cause of action; they cannot rely upon the publication as being actionable *per se*, and, if they fail in that, sustain themselves by reason of the averment of "special injuries and damages." *Robinson v. Rice*, 20 Mo. 235. (10) Averment of general loss of business will only lie when the words are actionable *per*

*se.* Where the publication is not actionable *per se*, and the plaintiff suffers injury by the loss of customers, the names of the customers must be set out. *Ins. Co. v. Ecclesine*, 6 Abbott ( N. S.) 9. ( 11 ) The petition avers that the defendant, contriving and falsely and fraudulently intending to injure the "Bank of Liberal," and these "plaintiffs in their good credit and reputation, and also in their said business as private bankers." Here are three different causes of action set up,—one in favor of the Bank of Liberal, one in favor of the individual members of the firm, and in such a cause of action they cannot sue jointly. *Duffy v. Gray*, 52 Mo. 528. And one for injuries to their business, which cannot be joined with injury to the members. *Duffy v. Gray*, 52 Mo. 528; Collyer on Partnerships, sec. 680; Story on Partnership, secs. 256, 257; Townsend on Libel and Slander, 381; Selwin, Nisi Prius, p. 1260; Town. on Libel and Slander, 201. The petition shows upon its face that the publication is in the nature of a legal proceeding to dissolve a copartnership, and, therefore, privileged. *Gilbert v. People*, 1 Denio, 41.

SMITH, P. J.—This suit was instituted in the circuit court of Barton county to recover damages for an alleged libel. The defendant filed a demurrer to the petition on the ground that it did not state facts sufficient to constitute a cause of action, which was by the court sustained. The plaintiffs declining to further plead, judgment was rendered in favor of the demurrant. The plaintiffs bring the case here by appeal.

The petition was as follows: "The above-named plaintiffs complain and allege that, on the —— day of January, 1889, long prior thereto, and every since that date, they were engaged in carrying on a banking business, as private bankers, under the style and name of 'Bank of Liberal,' at the town of Liberal, in Barton county, Missouri. That at, and prior to, the date aforesaid, plaintiffs, as such private bankers, under the name

of the Bank of Liberal, had built up, and maintained, a good, profitable and paying banking business at said town of Liberal; had merited and won the confidence and esteem of men of large means, who had become, and were, regular customers and depositors of said bank, and also the confidence and esteem of numerous banking institutions throughout the state of Missouri and many other states; and were largely engaged in negotiating loans, receiving deposits and transacting a general banking business. That said plaintiffs, as such private bankers, at the date aforesaid, long prior thereto and ever since then, were, and are, duly and lawfully authorized to transact a general banking business, to contract liabilities, negotiate loans and receive deposits in the name of the Bank of Liberal. That the defendant, well knowing the premises, but contriving and falsely and fraudulently intending to injure said Bank of Liberal and these plaintiffs in their good credit and reputation, and also in their said business as private bankers, and to cause it to be suspected and believed that said Bank of Liberal had been dissolved and plaintiffs were wrongfully and unlawfully engaged in the banking business, and had no right or authority to longer engage in the banking business, at said town of Liberal, nor any right or authority to contract liabilities, negotiate loans, receive deposits, nor prosecute the business of bankers, nor use the name of the Bank of Liberal; and, also, contriving and falsely and fraudulently intending to injure and destroy the custom and business which plaintiffs had built up as aforesaid; and to prevent persons from depositing their means with said bank, and from negotiating loans at said bank; and to injure said bank in its good credit and reputation with its correspondent banks in this and other states, and to vex, harass, oppress and injure the plaintiffs, did, on the —— day of January, 1889, at the county and state aforesaid, wrongfully and maliciously and injuriously compose and publish, and caused to be

published, of, and concerning, plaintiffs and their said bank a certain, false, scandalous, malicious and defamatory libel in the way of, and in respect to, their said business as bankers; which said false, scandalous and defamatory libel is, and was, of the tenor following, that is to say:

" ' *To all whom this may concern :*

" ' Notice is hereby given that the copartnership heretofore existing by and between G. W. Baldwin, G. H. Walser, J. G. Pitgen, J. A. Noyes, John Betz, F. L. Yale, Joseph York, J. S. Van Law, P. G. Boulware, Geo. Boulware and R. L. Baldwin, doing business under the firm name and style of the Bank of Liberal, and engaged in the business of private bankers in the town of Liberal, Missouri (meaning the bank hereinbefore mentioned), is hereby dissolved, so far as the undersigned is concerned; and on, and after, this day said parties (meaning the plaintiffs), each of them, are not authorized or permitted to do any business, contract any liabilities, negotiate any loans, or receive deposits of any kind, directly or indirectly, or further prosecute the business of bankers, or further use the name of said firm of the Bank of Liberal in the business aforesaid.

" ' G. H. WALSER.'

" That said defendant signed said false, scandalous, malicious and defamatory libel, and wrongfully, maliciously and injuriously procured the same to be published in the *Messenger*, a newspaper regularly published in said town of Liberal, and largely circulated in said town, county and state; and also falsely, wrongfully and maliciously and injuriously sent, and procured to be sent, to many of plaintiffs' depositors in said bank and to plaintiffs' banking correspondents in other cities and states, copies of said false, scandalous, malicious and defamatory libel.

" That by means of the premises the plaintiffs and the said Bank of Liberal have greatly been injured in

their credit and reputation aforesaid, and have and are suspected to have been guilty of the misconduct so as aforesaid mentioned to have been charged upon and imputed to them, and to have conducted themselves dishonorably, injudiciously, improperly and unlawfully in undertaking to transact a banking business at the town of Liberal as aforesaid ; and many of their said customers, depositors and bank correspondents, as well as the people generally, have been caused to suspect and believe that plaintiffs are, and have been, wrongfully and unlawfully engaged in the business of banking, as private bankers, and have no right or authority to do any business, contract any liabilities, negotiate any loans, or receive deposits of any kind, directly or indirectly, or to prosecute the business of bankers, or to use the name of the said firm of the Bank of Liberal in the business aforesaid. And many of plaintiffs' depositors, by reason thereof, have withdrawn from said bank their deposits ; many other people have been thereby prevented from transacting any banking business with plaintiffs ; many of their banking correspondents have lost confidence in said Bank of Liberal ; and said Bank of Liberal has been greatly reduced in its commercial and financial standing ; and plaintiffs have been greatly vexed, harassed, oppressed and injured, and lost and been deprived of divers great gains and profits, which, but for said libel, would have arisen and accrued to them in their said business as private bankers ; and have been and are greatly injured and damaged, in the sum of ten thousand dollars ; for which sum and for costs plaintiffs pray judgment."

The demurrer controverts the conclusions of the pleading, but, not denying the facts which are therein well pleaded, it by necessary implication admits their truth. Bliss on Code Plead., sec. 418. The defendant was not a member of said banking firm as we must infer from the petition was the fact. Then the giving of notice that he had withdrawn from it and that it was no

longer authorized to do any business as far as he was concerned was of itself harmless, unless there is something else in it of a libelous character.   The rule is that in order to render language concerning one in a special character or relation actionable "it must touch him" in that special character or relation ; for, unless it does, it must be judged in regard to its actionable quality by the rules which apply to language concerning an individual as such.   It is not sufficient that the language disparages him generally, or that his general reputation is thereby affected, it must be such as, if true, would disqualify him or render him less fit properly to fulfill the duties incident to the special character assumed. Townsend on Libel and Slander, sec. 190.   And in the authority just cited it is further stated in section 191, in those trades or professions in which ordinarily credit is essential to their successful prosecution, language is actionable *per se* which imputes to one in any such trade or profession a want of credit or responsibility or insolvency past, present or future.   Language concerning one in his trade or profession to be actionable *per se* must impute to him fraud, want of integrity or misconduct in the line of his business or profession whereby he gains his bread.   Every publication of language concerning a man or his affairs, which, as a necessary or natural proximate consequence, occasions pecuniary loss, is *prima facie* a libel if the publication be by writing.

The statute of this state (section 1591, Revised Statutes ) declares : "A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, or any malicious defamation made public as aforesaid, designed to blacken or vilify the memory of one who is dead and tending to scandalize or provoke his surviving relations and friends."   Similar definitions to that given in the

statute just referred are to be found among the cases
which have been adjudged in the appellate courts of this
state. *Nelson v. Margrave*, 10 Mo. 648 ; *Price v.
Whitely*, 50 Mo. 439 ; *Legg v. Dunlevy*, 80 Mo. 563 ;
*Hermann v. Bradstreet Co.*, 19 Mo. App. 227. In some
of these cases the definition there given of libel is
broader and more comprehensive than that given in the
statute ? As already intimated we think the publication
contains no statement that is libelous *per se*. The
words of the publication, though they relate to the plain-
tiffs in their business capacity, do not on their face bear
any injurious meaning. Interpreting the words of the
publication as therein collocated according to their usual
and ordinary meaning, and it is quite clear that they do
not fall within the definition of libel as declared in the
statute and adjudicated cases of this state.

If the publication is a libel on the plaintiffs in their
business, it must be so on account of some extrinsic fact
alleged in the petition. The universal rule is that, if
the words are not libelous *per se*, the petition must by
preliminary averments show extrinsic facts from which
the libel results. *Pollard v. Lyon*, 91 U. S. 225 ; *Legg
v. Dunlevy, supra ; McManus v. Jackson*, 28 Mo. 58 ;
*Salvatelli v. Ghio*, 9 Mo. App. 155. The nature of the
present action is that of special damages actually sus-
tained in consequence of words written and published
by defendant, and, unless such damage is the natural
and probable consequences of those words and of that
publication, the defendant cannot be held liable. And
the special damage will not help plaintiffs if the words
are not defamatory. *Legg v. Dunlevy*, 10 Mo. App.
461 ; *Young v. McCrea*, 3 Best & S. 264.

The plaintiffs contend that the averment in the
petition of these extrinsic facts, viz.: *First*. "General
loss of customers. *Second*. Many people were pre-
vented from transacting business with the bank, and
*third*, their reduced commercial and financial standing,"

renders the publication libelous. Were these injuries to plaintiffs in their special quality as bankers the natural and probable consequences of the words of the publication? The demurrer admits that the publication was untrue. Now, if it was untrue that the defendant was a member of said banking firm, as stated in the publication, then the declaring of the dissolution of the firm was a vain act—was nothing. And it must inevitably further follow that if the defendant was not a member of the plaintiffs' firm that it was no more authorized after than before said publication to transact any business to bind him. It is quite difficult to perceive how the extrinsic facts alleged in the petition in respect to said publication show that the damages therein specially stated could naturally and probably result from the publication. It is incomprehensible how a banking firm could lose depositors or the confidence of its correspondent banks or the banking business of the public generally because some reputable or disreputable person had falsely published a notice that his partnership relations with it have terminated and that it was no longer authorized to transact business as far as he is concerned, or how such injuries would naturally and probably result from such publication.

On the other hand if, as is conceded, it was untrue that defendant had dissolved his partnership relations with plaintiffs, and that it was untrue that they, in their partnership capacity, were no longer authorized to transact a banking business in the name of said firm so as to bind defendant, then this action is by several partners against a single one for damages in an action at law which cannot be maintained. *Bank v. Beans*, 55 Mo. 524; *Scott v. Caruth*, 50 Mo. 120; *Fuert v. Brown*, 23 Mo. App. 332. Damages would not be recoverable in such case even in a proceeding in equity. *Gaty v. Tyler*, 33 Mo. App. 494; *Fletcher v. Reed*, 121 Mass. 312. If the publication related to the firm and the defendant

was a member of it, then we have the singular spectacle of ten members of a partnership suing the eleventh member for damages resulting from the wrongful conduct of the latter in respect to the partnership. This is the *reductio ad absurdum* of the argument on this line. The withdrawal of a partner from any business firm might very naturally and probably subject it to serious loss and yet no damages could ordinarily be recovered therefor, and if none could be recovered for the act it must needs follow that none could be recovered for making it effectual by giving notice of it to the world. It would be his duty to give the notice in such case. *Dowzelot v. Rawlings*, 58 Mo. 75; *Pope & West v. Risley*, 23 Mo. 185.

We are unable to discover any charge in the publication or in the extrinsic facts alleged in respect thereto, which constitutes a cause of action. The judgment of the circuit court will be affirmed.