JAS. A. SPURLOCK, Defendant in Error, v. THE LOMBARD INVESTMENT COMPANY, Plaintiff in Error.

### Kansas City Court of Appeals, November 5, 1894.

1. **Libel: WHAT IS.** A libel is a malicious publication, either by print or by signs, or by pictures, tending to blacken the memory of the dead or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule; or to injure him in his office, profession, calling or trade; or to impute insolvency, inability to pay his debts, the want of integrity, personal incapacity or pecuniary inability to conduct his business; or to impute fraud, dishonesty or trickery in the conduct of his business; or to prejudice him in the way of his employment or trade; or to impute to a member of any learned profession that he does not possess the technical knowledge necessary for the proper practice of his profession, or has been guilty of professional misconduct.

2. ———: **SPECIAL CHARACTER: WHAT ACTIONABLE.** In order to render language concerning one in a certain character or relation actionable, it must touch him in that special character or relation; and it is not sufficient that it disparages him generally, or that his general reputation is thereby affected.

3. ———: **GENERAL DAMAGES.** The test as to the right to recover general damages for libel is: Does the law infer damages as being necessarily occasioned by the publication.

4. ———: **ADVERTISEMENT OF TRUSTEE'S SALE.** The advertisement in the newspaper of a trustee's sale, for the purpose of raising money to pay a bond secured by a deed of trust, is not actionable *per se* in favor of the grantor in the deed of trust and the maker of the note, though he be a lawyer, a real estate dealer, a farmer and a hotel keeper.

5. ———: **PLEADING: SPECIAL DAMAGES.** And if he is injured by such publication, it must be for some special reason which his pleading should disclose.

VOL. 59—15

6. **Slander:** PLEADING: SPECIAL DAMAGES. In order to recover special damages in a case like this, the petition should allege the names of the persons, banks and money loaners who refused to do business with plaintiff in consequence of the publication.

*Appeal from the Morgan Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

REVERSED.

*John A. Blevins* for plaintiff in error.

(1) The amended petition does not state a cause of action, and the motion in arrest of judgment should have been sustained. *First.* The publication was not libelous *per se,* and no special damages were alleged. The question whether the publication is libelous or not is one of law for the court where there is no ambiguity. There can be but one meaning attached to the publication. There is no ambiguity, and the publication upon its face is not libelous. *McGinnis v. George Knapp & Co.,* 109 Mo. 131; *Woodruff v. Bradstreet & Co.,* 22 N. E. Rep. 354; *Moore v. Francis,* 23 N. E. Rep. 1127; *Hirshfield v. Bank,* 18 S. W. Rep. 743; *Snyder v. Andrews,* 6 Berb. 43; *Hunt v. Bennet,* 19 N. Y. 173; *Kingsberry v. Bradstreet,* 116 N. Y. 211; Odgers on Libel and Slander, pp. 88, 89. *Second.* It did not state sufficient facts to constitute a case of libel of business man. The rule is, that in an action of libel of business man the petition must state that plaintiff was carrying on a certain business, and that the libelous words were published of, and concerning, him in that business and where the words are not libelous *per se,* special damages must be alleged. The words published must charge plaintiff of such things or conduct as will render him less fit or competent to carry on such business. *Rammell v. Ottis,* 60 Mo. 365; *Curry v. Collins,* 37 Mo. 324; *Legg v. Danleavy,* 80 Mo. 558–

563; *Herman v. Bradstreet Co.*, 19 Mo. App. 227. *Third.* It is not libelous to publish of another that he owes money, and, taking the alleged publication in its broadest sense, it can not be construed to mean anything more than this. 13 Am. and Eng. Encyclopedia of Law, 301. The court erred in the admission of testimony under the petition over defendant's objection, as there was no cause of action stated.

*John D. Bohling* and *D. E. Wray* for defendant in error.

(1) It is well established that a publication affecting one in his profession, business or trade, if false, is libelous *per se.* Newell on Defamation, Slander and Libel, sections 34 and 35, pages 192 and 193; *Newell v. Haw*, 22 Minn. 235; *Mitchell v. Bradstreet Co.*, 116 Mo. 226; 28 Am. Law Reg., 257; *Hermann v. Bradstreet Co.*, 19 Mo. App. 227; *Hays v. Ball*, 72 N. Y. 418; *Weast v. Whittemore*, 28 Mich. 366; *White v. Nichols*, 3 Haw U. S. 285; *Kimball v. Fenander*, 21 Wis. 334; *Locke v. Bradstreet*, 22 Fed. Rep. 771; *McGinnis v. Knapp*, 109 Mo. 137; Odgers on Libel and Slander, pages 31 and 78. (2) The publication of a foreclosure sale of a man's land under a trust deed, practicing law, building houses, buying and selling lands, and proprietor of a hotel, as in this case, is actionable *per se.* Townsend on Libel and Slander, section 133; *Elvain v. Badger*, 23 Ill. 498; *Eber v. Dun*, 12 Fed. Rep. 526. (2) The publication being libelous *per se*, it was not necessary to allege nor prove special damages. *Trimble v. Andersan*, 79 Ala. 514; *Depew v. Roberson*, 95 Ind. 412; *Swift v. Diceman*, 31 Conn. 285; *Newbit v. Slotrich*, 35 Me. 215. (4) Our appellate courts are slow to interfere with the verdict of a jury, when there is evidence to support it. This applies

more forcibly to prosecution' for libel, where the jury under the direction of the court, determine the law and the fact.    Constitution of Missouri, article 2, section 14; *State v. Armstrong*, 106 Mo. 395.

SMITH, P. J.—This is an action of libel. The petition, among other things, alleged that the defendant was a business corporation in this state, engaged in loaning money on real estate, and that the other defendant, Mounts, was the owner and editor of the "Versailles *Statesman*," a newspaper printed and published in the city of Versailles, in this state; that plaintiff was engaged in the practice of law, buying and selling lands and town lots, building houses, farming, and doing a large business, and was the owner of a large hotel in the said city of Versailles, where he lived and enjoyed a large credit and confidence as a man of business in the commercial and trading community, and the confidence of the people as an attorney at law, till the printing and publishing the false, malicious and defamatory libel therein set forth; that he borrowed of the defendant investment company, the sum of $1,100, and executed to it his coupon bond and a deed of trust on certain real estate to secure the payment thereof and the trustee therein named, being David H. Ettien, its regular trustee; that on the fifteenth day of June, 1892, the plaintiff paid off said trust debt, and the defendant investment company surrendered to plaintiff said coupon bond and released by deed its lien on the plaintiff's real estate in the deed of trust described; that afterwards, on the eighteenth day of August, 1892, the defendant investment company, well knowing that said trust debt had been paid, did wrongfully, unlawfully and maliciously compose, print and publish, and cause to be composed, printed and published of and concerning plaintiff and his said busi-

ness in the columns of said Versailles *Statesman*, the following false, defamatory, scandalous and malicious libel, to wit:

"TRUSTEE'S SALE."

"Whereas, on March 8, 1887, James A. Spurlock made, executed and delivered his deed of trust, for the purpose of securing the payment of one bond for the sum of $1,100 (eleven hundred dollars), named in the said deed of trust, wherein he conveyed to the undersigned, David H. Ettien, trustee, the following described real estate, situate in the county of Morgan and state of Missouri, to wit:        *        *        *        *        *        *

"And, whereas, said deed of trust was filed for record March 16, 1887, at 9:30 o'clock A. M., and recorded in deed book 7, at pages 229 to 233 inclusive, of the records of said Morgan county, Missouri; and whereas, said bond is now past due and unpaid.

"Now, therefore, public notice is hereby given that I, the undersigned David H. Ettien, the trustee named in said deed of trust, under and by virtue of the authority in me by said deed of trust, at the request of the legal holder and owner said bond, will proceed to sell the above described real estate at public vendue, to the highest bidder, at the north door of the courthouse of Morgan county, Missouri, in the city of Versailles, the county seat of said county, on Wednesday, September 14, A. D. 1892, between the hours of 9 o'clock in the forenoon and 5 o'clock in the afternoon of said day, for the purpose of raising money to pay the amount of said bond, with interest and the costs of executing this trust.

"(Signed) DAVID H. ETTIEN, Trustee."

That defendants caused, and procured, said malicious and derogatory libel so published in said newspaper to be distributed through the mails, and would not correct the falsehood so scattered abroad by

the said printing and publication, and would not explain
or apologize through the columns of said paper, etc.;
that by reason of the composing, printing and publica-
tion of said false, defamatory, malicious and scandal-
ous libel, he has been greatly injured in his good name,
fame, credit and business, that it caused people to
believe that he was in failing circumstances, and insol-
vent, and not a suitable man to be trusted, and has pre-
vented him from trading and conducting his business
as he did before said libel was published of and con-
cerning him, and expressly prevents him from selling
his lands or houses and otherwise has damaged him in
the sum of $4,000, for which he prays judgment and
general and proper relief.

The answer was a general denial. There was a
trial resulting in a judgment for defendant Mounts,
and against the defendant, investment company, in
the sum of $700, and to reverse which the latter has
brought the cause here by writ of error.

The defendant objects that, inasmuch as the
alleged publication is not *libelous per se* and no special
damages are alleged, therefore, the petition does not
state facts sufficient to constitute a cause of action.
Our statute defines a criminal libel to be "the malicious
defamation of a person, made public by any printing,
writing, sign, picture, representation or effigy, tending
to provoke him to wrath or expose him to public
hatred, contempt, or ridicule, or to deprive him of the
benefits of public confidence and social intercourse, or
any malicious defamation, made public as aforesaid,
designed to blacken and vilify the memory of one who
is dead, and tending to scandalize or provoke his sur-
viving relatives and friends." R. S., sec. 3869.

Many and varied definitions of a libel have been
formulated by eminent judges and law writers as appli-
cable in actions for damages for the private injury.

The supreme court of this state has defined a libel to be "a malicious publication, either in printing or by signs or pictures, tending to either blacken the memory of the dead or the reputation of one who is alive and expose him to public hatred, contempt or ridicule;" or any malicious printed slander, which tends to expose a man to ridicule, contempt, hatred or degradation; or a censorious, ridiculous writing, picture or sign made with a mischievous and malicious intent towards government, magistrate or individual; or "any printed publication that tends to bring a man into disrepute, ridicule or contempt." *Nelson v. Margrave*, 10 Mo. 648; *Price v. Whitely*, 50 Mo. 439; *Legg v. Dunlevy*, 80 Mo. 563; *McGinnis v. Knapp*, 109 Mo. 131. It has been elsewhere declared that any written words are libelous which have a tendency to injure one in his office, profession, calling or trade. *Johnson v. Stebbons*, 5 Ind. 565; *Canorean v. Publishing Co.*, 62 Wis. 403; *Hetherington v. Sterry*, 28 Kan. 426; *Fawcett v. Charles*, 13 Wend. 473. And so, too, it has been held that to write or publish anything that imputes insolvency, inability to pay one's debts, the want of integrity in his business, or personal incapacity, or pecuniary inability to conduct it with success, or which impute to him fraud or dishonesty, or any mean and dishonorable trickery in the conduct of his business, or which, in any other manner, are prejudicial to him in the way of his employment or trade, is libelous *per se*, if without justification, and general damages may be recovered. *Baldwin v. Walser*, 41 Mo. App. 243; *Moore v. Francis*, 121 N. Y. 199; *Cheney v. Goodrich*, 98 Mass. 224; *Maynard v. Insurance Co.*, 47 Cal. 207; *Fitch v. DeYoung*, 66 Cal. 339; *Sewell v. Catlin*, 3 Wend. 291; *Newell v. Howe*, 31 Minn. 235; Am. and Eng. Ency., 314, note 1; *Eber v. Dun*, 12 Fed. Rep. 526. And so, too, further, it has been declared that it is libelous to

impute to a member of any learned profession that he does not possess the technical knowledge necessary for the proper practice of his profession, or that he has been guilty of professional misconduct. *Goodburn v. Boreman*, 9 Bing. 532; *Eviston v. Cramer*, 47 Wis. 659; *Russell v. Anthony*, 21 Kan. 450.

*Newbold v. Bradstreet*, 57 Md. 38, was where the defendant conducted a mercantile agency and printed daily sheets containing a list of transfers of real and personal property, mortgages, etc. The defendant printed in said sheet, under the head of "chattels," the words "Newbold & Sons to J. R. Beems." Whereupon plaintiffs, on the ground that the publication indicated that they had made a chattel mortgage, which they had not, sued defendant to recover both general and special damages to their business. It was held that the alleged libel contained nothing actionable *per se*, that being the test to the right to recover general damages in this class of cases. In *Zier v. Hofflin*, 33 Minn. 63, a druggist made the following publication in a newspaper, to wit: "Wanted—E. B. Zier, M. D., to pay a drug bill." In deciding the case, the court said the only facts suggested by it, to wit, that plaintiff owes a drug bill, and the creditor wishes him to pay, do not necessarily impute anything wrong to plaintiff and are not defamatory on their face. *Woodruff v. Bradstreet*, 116 N. Y. 217, and 35 Hun, 16, was where the defendant, a mercantile agency, published a statement to the effect that a judgment for $4,000 had been rendered against plaintiff, who was engaged in the manufacturing business, which was untrue. In an action for libel, it was held that the words were not in themselves libelous as an imputation against the soundness of plaintiff's financial condition. In *Hirshfield v. Bank*, 83 Tex. 453, it was held that a protest of a note before due, in the absence of allegation of special damages,

would give an action for only nominal damages. The language of the notarial protest, in its ordinary meaning, did not charge the plaintiff with insolvency, loss of credit or with dishonest conduct of business, and it was not, therefore, actionable per se.

The rule is, that in order to render language concerning one in a special character or relation actionable, "it must touch him" in that special character or relation; for unless it does it must be judged, in regard to its actionable quality, by the rules which apply to language concerning an individual as such. It is not sufficient that it disparages him generally or that his general reputation is thereby affected; it must be such as, if true, would disqualify him or render him less fit properly to fulfill the duties incident to the special character assumed. *Baldwin v. Walser, supra;* Townshend on Libel and Slander, sec. 190. And the last named author, in section 191 of his work, further states that in those trades or professions in which, ordinarily, credit is essential to their successful prosecution, language is actionable *per se* which imputes to anyone in such trade or profession a want of credit or responsibility or insolvency, past, present or future.

The question, then, is, does the alleged libel fall within any of the definitions to which we have just referred. Does it contain anything that renders it actionable *per se;* that is, from which the law would infer damages as being necessarily occasioned by the publication? This is the test as to the right to recover general damages. *Newbold v. Bradstreet, supra;* Townshend on Libel and Slander, 146 to 148. Does the publication complained of, according to the foregoing authorities contain anything that imputes to plaintiff in any one of his numerous qualities, whether as a lawyer, real estate dealer, farmer, innkeeper or what not, fraud, dishonesty, or any mean and dishonorable trickery in

his conduct, insolvency past, present or future, or want of credit or integrity of any pecuniary ability to carry on his business with success? We think these queries must be answered in the negative.

One may execute his note and secure the same by deed of trust on real estate and when the note becomes due fail to pay it, in consequence of which the holder of the note may require the trustee to give notice of sale under the deed of trust, without giving rise to any legal inference or presumption of insolvency, or that such acts will necessarily tend to impair or injure the credit and standing of the person giving the note and deed of trust. It is a matter of common observation and experience that it not unfrequently occurs that persons executing mortgages and deeds of trust on their real property, afterwards sell their equities of redemption, the purchaser assuming the payment of the existing incumbrance. It often happens that the purchaser fails to pay the mortgage or trust debt and thus compels the holder of the same to foreclose the mortgage or trust deed. The maker of the note may not pay it because his vendee has assumed to pay it and because the property in which the former has parted with his equity of redemption is liable for it. Sales under deeds of trust and mortgages are, in some instances, allowed to take place to perfect titles or to cut out junior liens of various kinds or for the purpose of lodging the legal title in a particular person and the like.

A note may be unjust or paid off, as in the present case, and the sale advertised under the deed of trust, without any fault of the maker of the note. The act imputed by the publication to the plaintiff in such cases as we have instanced is susceptible of explanations. For these reasons, neither the act nor the language of the defendant's publication necessarily, or in their ordinary tendency or meaning, charge the plaintiff with

insolvency, loss of credit, or with dishonest conduct in business, or untrustworthiness or anything of the kind. The law in such case does not presume an injury to plaintiff and allow a recovery of general damages as when the words are actionable in themselves, for the plaintiff's reputation as a lawyer, farmer, real estate dealer and innkeeper may or may not have suffered any injury according to the circumstances by the publication of such alleged defamatory matter as would not necessarily or ordinarily injure, or tend to injure, him in these particulars. If it did so injure him in this case, then the fact should have been alleged, showing the special injury.

If in consequence of the publication persons refuse to employ plaintiff as an attorney or to work for him on his farm or to buy from or sell to him lands and town lots or to build houses for him or to patronize his inn or if banks and money loaners refuse to extend to him credit, then he should have alleged the names of such persons, banks and money loaners, and the damage should have been stated with particularity in order that the defendant might be enabled to meet the charge, if false. 1 Chitty, Pleading [16 Ed.], 414; 2 Chitty, Pleading [16 Ed.], 543.

It is our conviction that the publication which is the foundation of this action as a libel is not actionable *per se* and consequently we must sustain the defendant's objection to the petition.

In this view of the case it becomes unnecessary to notice the other points discussed in the brief of counsel. The judgment will be reversed. All concur.