### MARY J. TWOMBLY *vs.* SAMUEL L. MONROE.

Essex.   Nov. 8, 1883. — Feb. 29, 1884.   W. ALLEN & HOLMES, JJ., absent.

In an action for trespass and assault, in ejecting a tenant at will, the defendant justified as agent of a lessee of the premises, testifying that he, as owner, executed and delivered a written lease of the premises to the lessee, who signed the lease and also a written notice to the plaintiff to vacate the premises, and handed them both to the defendant, saying, "Go ahead and get possession." There was no other evidence as to the execution and delivery of the lease and notice, or of the defendant's authority to act for the lessee. *Held,* that the plaintiff was entitled to go to the jury upon the defendant's evidence.

An article published in a newspaper was headed "The Locust Street Brutality explained," and signed "The Landlord;" stated that "the woman" came to his house on a certain day, engaged rooms at a price named, and left at a certain time, having paid a certain sum; that about three months previously she decided not to come down stairs at all, and was consequently a great deal of trouble; that he told her if she would leave at a time named and give him a certain sum, he would give her a receipt in full, which she would not do; and that she kept her door locked, and would not give any satisfaction; and concluded as follows: "She is not a stranger here, — she never made friends. Can find out all about her by taking a little trouble." *Held,* in an action by the tenant against the landlord for libel, that a ruling, as matter of law, that the publication was not libellous or actionable, was erroneous; and that the question should have been submitted to the jury.

TORT in four counts. The first count alleged that the defendant forcibly broke and entered the plaintiff's dwelling-house on Locust Street in Haverhill, and did certain acts therein. The second count was for an assault. The third count was for the conversion of certain goods of the plaintiff. The fourth count alleged that the defendant caused to be published in a newspaper in Haverhill a false and malicious libel concerning the plaintiff, a copy of which was as follows: "The Locust Street Brutality explained. The woman came to my house, Sept. 16, 1882, engaged a suite of rooms for $1.50 a week. She left April 11, 1883. She paid $34.50. About three months ago she decided not to come down stairs at all; consequently she was a great deal of trouble. I told her six weeks ago, that if she would leave the 1st of April, and give me $6, I would give her a receipt in full. She would n't do it. She kept her door locked, and would not give any satisfaction. I sought advice, and did as I was told. She is not a stranger here, — she never made friends. Can find out all about her by taking a little trouble. The Landlord."

Trial in the Superior Court, before *Staples*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff introduced evidence tending to prove that on September 16, 1882, she began to occupy certain rooms in a house owned and occupied by the defendant, under an oral contract with him to pay him rent at the rate of one dollar and a half per week, payable monthly; that she had paid all the rent due to the defendant except the sum of about ten dollars, which was in arrear, and continued to occupy said rooms until April 11, 1883; that on that day, while the plaintiff was temporarily absent from said rooms with the intention of returning, the defendant effected an entrance therein, without any breach of the peace; that, upon hearing of the entry of the defendant, the plaintiff returned to her rooms, the defendant trying without success to prevent her entry; that the defendant told the plaintiff that he had got possession, and she must not come in; and that he then removed the plaintiff's effects, took out the door and windows, put out the fire, and tried forcibly to remove the plaintiff, taking her by the shoulder.

The defendant testified that, on April 6, 1883, he executed and delivered a written lease, under seal, of said premises to

Oliver T. Peters, for the term of six months from said April 6; that Peters signed it, and also signed the following paper, addressed to the plaintiff: " You will please take notice that I have a written lease of the premises now occupied by you at No. 69 Locust Street in this city, from the owner thereof, and you are hereby required to vacate the same forthwith. Haverhill, Apr. 6, 1883 ; " and that Peters handed both the lease and said paper to the defendant, saying, " Go ahead and get possession ; " and, in pursuance of this authority, the defendant did what he afterwards did as agent of· Peters, and sent this notice to the plaintiff by his daughter on April 7.

The defendant further testified that Peters never occupied the rooms ; and that nothing had been said or done between him and Peters between April 6 and the time of the acts complained of.

There was no other evidence as to the execution and delivery of said lease or paper, or of the authority of the defendant to act for Peters. Peters was not called or summoned as a witness at the trial.

The plaintiff admitted that, on April 7, 1883, she received the aforesaid notice from the hands of the defendant's daughter.

The plaintiff testified that, at the time of the alleged trespass, the name of Peters was not mentioned, nor was there any statement made to her that the defendant was acting for Peters. The defendant did not contradict this testimony, and introduced no testimony that he had at any time told the plaintiff that he was the agent of, or authorized to act' for, Peters, except as appears herein ; but it appeared that the defendant had taken possession of the premises, and was in possession when the plaintiff returned thereto, and it did not appear that she made any inquiry as to the authority under which he acted or was there.

The plaintiff contended that she was entitled to go to the jury upon this evidence, which was all the evidence upon the first three counts. But the judge ruled that there was no evidence to warrant the jury in finding that there was no delivery of said lease, or that the defendant was not agent of the lessee in taking possession of the premises and doing the acts done therein ; and also ruled that, upon the evidence, the plaintiff was not entitled to recover on the first and third counts ; and directed the jury to find for the defendant on those' counts.

The judge instructed the jury, as to the second count, that the defendant had the right to use necessary and suitable force to remove the plaintiff from said rooms, and no more, she refusing to go when requested; and that if he used no more force than was necessary and suitable under all the circumstances, they should return a verdict for the defendant on the second count; and that if he used unsuitable and unnecessary force in removing her, they should return a verdict for the plaintiff.

The plaintiff then introduced evidence tending to prove that the defendant caused to be published in the Haverhill Daily Bulletin, a newspaper published in Haverhill, the article alleged to be a libel in the fourth count; and that it was published of and concerning the plaintiff, and referred to her. No damage was offered to be shown except such as would be implied from the fact of such a publication.

The judge ruled, as matter of law, that the publication was not in itself libellous or actionable; and directed the jury to return a verdict for the defendant.

The jury returned a verdict for the defendant on all the counts; and the plaintiff alleged exceptions.

*W. H. Moody,* (*N. C. Bartlett* with him,) for the plaintiff.

*I. A. Abbott,* for the defendant.

FIELD, J. The plaintiff was tenant at will of the defendant. That tenancy was determined by the execution and delivery of the written lease to Peters, if it was executed and delivered. Peters, after the delivery of the written lease to him and notice thereof to the plaintiff, could, by himself or his agents, take possession and eject the plaintiff, using such force as was reasonably necessary. *Curtis* v. *Galvin,* 1 Allen, 215.

If he committed a breach of the peace, the Commonwealth only could prosecute him therefor. If he used unnecessary force, he was liable to the plaintiff, in an action by her. *Low* v. *Elwell,* 121 Mass. 309. But the execution of the lease by the defendant, the delivery of it to Peters, and the authority of the defendant to do what he did as agent for Peters in obtaining possession, were facts which the defendant must prove to justify his acts. *Blake* v. *Damon,* 103 Mass. 199, 210. The exceptions state, "There was no other evidence as to the execution and delivery of said lease or paper, or of the authority of the

defendant to act for Peters," than the testimony of the defendant. This testimony the jury may have disbelieved. The plaintiff was entitled to go to the jury upon this evidence, and to persuade them, if she could, that it was not true. It was not for the plaintiff to prove that the lease was not delivered. The defendant must satisfy the jury that it was delivered, or fail in his justification. The ruling of the presiding justice upon this part of the case was erroneous.

The fourth count is for a libel. The presiding justice ruled, as matter of law, that the publication was not libellous or actionable. This count contains no statement of extrinsic facts, and no *colloquium*, except that the publication was concerning the plaintiff, to show that the words published were used or capable of being understood in any other than their ordinary sense; and the question is, whether the words published, in their ordinary import, have any tendency to bring the plaintiff into public hatred, contempt, or ridicule. Pub. Sts. *c.* 167, § 94, Forms of declarations in slander and libel. *Commonwealth* v. *Child*, 13 Pick. 198. *Carter* v. *Andrews*, 16 Pick. 1. *Chenery* v. *Goodrich*, 98 Mass. 224. *York* v. *Johnson*, 116 Mass. 482.

If the words published are fairly capable of two meanings, one harmless and the other defamatory, it is a question for the jury in what sense readers may have understood them. See *Simmons* v. *Mitchell*, 6 App. Cas. 156. If the declaration is demurred to, the court must determine whether it sets out a good cause of action. *Goodrich* v. *Davis*, 11 Met. 473. *Chenery* v. *Goodrich*, *ubi supra*. *Homer* v. *Engelhardt*, 117 Mass. 539. In *Shattuck* v. *Allen*, 4 Gray, 540, "after the cause was opened to the jury, it being objected that the publication was not libellous, and the court inclining to that opinion, it was withdrawn from the jury, and submitted to the whole court." The court said, that the point whether the question of libel or no libel should have been sent to the jury was not made at the trial, or reserved in the report, and, after commenting upon the law and practice in this respect, entered judgment for the defendant.

For the law in criminal prosecutions for a libel, see *Commonwealth* v. *Anthes*, 5 Gray, 185, 212 *& seq.*, and the cases cited in the dissenting opinion of Mr. Justice Thomas.

In England, by the St. of 32 Geo. III. *c.* 60 (1792), it was provided that, on the trial of an indictment or information for a libel, the jury may give a general verdict, and shall not be required or directed by the court to find the defendant guilty merely on proof of publication, and " of the sense ascribed to the same in such indictment or information; " that the presiding judge may give directions to the jury as in other criminal cases, and the jury may in their discretion find a special verdict; and the defendant, if found guilty, may move in arrest of judgment. This act, as is well known, was designed to protect defendants in criminal prosecutions for a libel from the power of the judges; but it has undoubtedly had some effect upon the proceedings in civil actions. In civil proceedings for a libel in England, it is said that " it is only when the judge is satisfied that the publication cannot be a libel, and that, if it is found by the jury to be such, their verdict will be set aside, that he is justified in withdrawing the question from their cognizance." Kelly, C. B., in *Cox* v. *Lee*, L. R. 4 Ex. 284, 288. Channell, B., in the same case, seems to have been of opinion that in every civil case, at the trial, the question of libel or no libel must be submitted to the jury; but this is not the English law. The existing law of England is not stated with entire accuracy by Kelly, C. B., as is shown by *Mulligan* v. *Cole*, L. R. 10 Q. B. 549; *Hart* v. *Wall*, 2 C. P. D. 146; *Hunt* v. *Goodlake*, 43 L. J. (N. S.) C. P. 54; and *Capital & Counties Bank* v. *Henty*, 5 C. P. D. 514; *S. C.* 7 App. Cas. 741.

We are satisfied with the rule, that, at the trial of civil actions for a libel, it is only when the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense, that the court can rule, as matter of law, that the publication is not libellous, and withdraw the case from the jury, or order a verdict for the defendant.

We cannot say that the publication in the case at bar does not impute to the plaintiff an intention to keep possession without paying rent; and that the words, " She is not a stranger here, — she never made friends. Can find out all about her by taking a little trouble," — do not convey an implication or insinuation that the plaintiff is considered unfit for friendly intercourse by her

neighbors, and do not thus tend to expose her to obloquy; if so, the publication may be libellous. We think the presiding justice erred in ruling, as matter of law, that the publication was not libellous, and in not submitting the question to the jury.

*Exceptions sustained.*