ALFRED W. INGALLS *vs.* HASTINGS & SONS PUBLISHING COMPANY.

SAME *vs.* AUGUSTUS B. TOLMAN.

Essex.   April 6, 1937. — September 12, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Libel and Slander.   Pleading, Civil,* Declaration, Demurrer.

A demurrer to the declaration in an action for libel should not be sustained unless the words published, taken in the circumstances in which they are alleged to have been used, are incapable of a defamatory meaning.

It was libellous to impute to a plaintiff, a candidate for public office at a coming election, that he had made a charge that his neighbor, a respectable member of the community, spent his spare time peering through the plaintiff's window at a woman so that the plaintiff had to plant a row of trees on his property to protect her privacy; also to impute that the plaintiff usually "fights behind the ample skirts of his wife."

On demurrer in an action for libel, it was immaterial whether special damage to the plaintiff was properly alleged if the publication in question, taken by itself, could be found to be libellous.

Privilege is a matter of defence to an action for libel and is not open on demurrer.

A declaration including an entire newspaper article alleged to be libellous and containing some defamatory statements and some which were not defamatory, was not defective as lacking the certainty or conciseness required by G. L. (Ter. Ed.) c. 231, § 7, Second.

TWO ACTIONS OF TORT.   Writs in the Superior Court dated December 9 and November 5, 1936.

The plaintiff appealed from orders by *Donnelly*, J., sustaining demurrers.

*W. R. Bigelow*, (*A. W. Ingalls* with him,) for the plaintiff.
*H. R. Mayo*, (*A. B. Tolman* with him,) for the defendants.

FIELD, C.J.   These are two actions of tort for libel; one against a corporation, the other against an individual.   The declarations alleged that the defendants published or caused to be published in a newspaper a libellous article concerning the plaintiff.   The declaration in the action against the corporate defendant contains the allegation that the alleged "publication . . . was made on a date and time at which the plaintiff was before the public as a candidate for the office of Register of Probate and Insolvency of Essex County, and that because of that fact his candidacy was greatly affected adversely," and the declaration in the action against the individual defendant contained an allegation that the defendant in causing the alleged libel to be published intended thereby "to influence the result of an election, which was to be held seven days after the date of said publication." Material portions of the alleged libel appear in a footnote.*

Demurrers to the declarations, and to each of the two counts of the declaration in the action against the corporate defendant, were sustained, and the plaintiff appealed.  *Peck*

---

* The alleged libel refers to the plaintiff as "former Rep. Alfred W. Ingalls, candidate on the Republican ticket for Register of Probate," clearly imports that the plaintiff and the individual defendant owned or occupied adjoining premises, and contains the following statements:

"For reasons of his own, Mr. Ingalls built his house with two driveways on one side and none on the other, and 7½ feet from my side line, thereby injuring both his property and mine. . . . Ingalls then planted eight poplar trees in this 7½ foot space as he said at the hearing in Boston 'as a screen against the prying eyes of the Lewis family and to stop the annoyance of the Ingalls' maid by the family next door.'

"The Lewis he referred to was the late Edwin C. Lewis for more than 40 years the treasurer of the Equitable Cooperative Bank and one of the best known and most respected men in Lynn.

"His family naturally resented this gratuitous insult which seemed to imply that Mr. Lewis spent his spare time peering through the Ingalls' window at a middle-aged negress, and that Ingalls had to plant a row of trees to protect her privacy.

". . . It seemed to me that nothing more clearly indicates the state of mind of a man who can make such a charge. . . .

"I am a Republican and always have been, but after living 16 years as an Ingalls' next door neighbor and seeing him operate I would not vote for him for any office, however insignificant, not even that of keeper of a dog pound. . . .

"I dislike to engage in a controversy with a woman but if Ingalls, as usual, fights behind the ample skirts of his wife, I shall publish a letter written by Mrs. Ingalls to my sister, which is very informative."

v. *Wakefield Item Co.* 280 Mass. 451, 453. Each of those counts sets forth in full the alleged libellous article, as did the declaration in a single count in the action against the individual defendant.

1. The declarations allege a libel and in that respect were good against demurrer.

Whether a publication is defamatory or not presents a question as to the meaning of words which differs from that presented when a written contract comes before a court for construction. In the latter case, the question normally is, What meaning would a reasonable man, knowing all the relevant circumstances, give to the words of the document? In general, that meaning is determined by the judge, and not left to the jury. *Smith* v. *Faulkner*, 12 Gray, 251, 254–256. *Cunningham* v. *Washburn*, 119 Mass. 224, 226, 227. *Bascom* v. *Smith*, 164 Mass. 61, 76. *Aldrich* v. *Bay State Construction Co.* 186 Mass. 489, 493, 494. *Arcade Malleable Iron Co.* v. *Jenks*, 229 Mass. 95, 100. Am. Law Inst. Restatement: Contracts, § 230. Williston, Contracts (Rev. Ed.), §§ 607, 616. Wigmore, Evidence (2d ed.), § 2556. But a writing is a libel if, in view of all relevant circumstances, it discredits the plaintiff in the minds, not of the court (*King* v. *Northeastern Publishing Co.* 294 Mass. 369, 370, nor of wise, thoughtful and tolerant men, nor of ordinarily reasonable men, but of any "considerable and respectable class in the community." *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 454. The emotions, prejudices and intolerance of mankind must be considered in determining the effect of a publication upon the standing of the plaintiff in the community. The question, therefore, whether a publication is defamatory or not, being dependent upon the effect produced upon the public or a considerable part of it, is one particularly fit for trial by jury. Possibly a court might rule upon demurrer, or by way of instruction to a jury, that a particular publication is defamatory as matter of law. *Loker* v. *Campbell*, 163 Mass. 242, 244–245. *Fay* v. *Harrington*, 176 Mass. 270, 273. But compare *Broome* v. *Agar*, 138 L. T. (N. S.) 698. And it is settled that a publication may be so clearly not defamatory

that a court may sustain a demurrer or direct a verdict for the defendant. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 454. But a demurrer to a declaration in libel cannot be sustained, nor can a case be withdrawn from the jury, unless the words (under the circumstances, G. L. [Ter. Ed.] c. 231, § 147, Forms, 18, *Instruction*, page 2893, *McCallum* v. *Lambie*, 145 Mass. 234, 237, *Friedman* v. *Connors*, 292 Mass. 371, 374–375) are incapable of a defamatory meaning. *Twombly* v. *Monroe*, 136 Mass. 464, 468–469. *Fay* v. *Harrington*, 176 Mass. 270, 273. *Robinson* v. *Coulter*, 215 Mass. 566, 570. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 453, 456. *King* v. *Northeastern Publishing Co.* 294 Mass. 369. *Fahy* v. *Melrose Free Press Inc.* 298 Mass. 267, 268.

Tested by these rules, the words of the publication in these cases could be found to be libellous. That the words attributed to the plaintiff in the publication constituted no reflection upon the late Edwin C. Lewis personally, is immaterial. *Cox* v. *Lee*, 4 L. R. Ex. 284. *Byrne* v. *Deane*, [1937] 1 K. B. 818, 841. The interpretation put upon the plaintiff's words by the defendants was that the plaintiff charged that "Mr. Lewis spent his spare time peering through the Ingalls' window at a middle-aged negress, and that Ingalls [the plaintiff] had to plant a row of trees to protect her privacy." To impute to the plaintiff the making of such a charge against a respectable man, then deceased, could be found to be libellous. Moreover, the suggestion that Ingalls "as usual," might fight "behind the ample skirts of his wife," could be found libellous, as implying cowardice. Whether in other particulars the words of the publication could be found to be libellous need not be considered.

2. The other reasons for demurrer are unsound.

Since the article published, taken by itself, could be found libellous, it is immaterial upon demurrer whether special damage or defamation of the plaintiff in some special capacity was or was not properly alleged. *Craig* v. *Proctor*, 229 Mass. 339, 340–341. *Fahy* v. *Melrose Free Press Inc.* 298 Mass. 267, 268. *I. W. Holdsworth, Ltd.* v. *Associated Newspapers, Ltd.* 107 L. J. K. B. (N. S.) 69, 76. The point

that the article was a fair comment upon a matter of public interest and therefore privileged (see *Commonwealth* v. *Pratt*, 208 Mass. 553), is matter of defence not open on demurrer, to say nothing of the fact that the publication was alleged to be malicious. *Robinson* v. *Coulter*, 215 Mass. 566, 571. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 457.

Since the entire publication was included in the declaration by reference, the declaration is good against demurrer if any defamatory statements appear in it. The plaintiff was not bound to point out in his declaration the sentences or words relied on as defamatory, having alleged the whole publication to be libellous. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 453. *Leonard* v. *McPherson*, 146 Cal. 616. The fact that statements, not libellous, contained in the same publication as the defamatory statements, are included in the declaration by reference, does not make the declaration demurrable as lacking the certainty or the conciseness required by G. L. (Ter. Ed.) c. 231, § 7, Second. *Feldman* v. *Witmark*, 254 Mass. 480, 482. The real question is whether the article published contained statements capable of a defamatory meaning.

It follows that in each case the order sustaining the demurrer must be reversed and an order entered overruling the demurrer.

*So ordered.*