GEORGE M. POLAND *vs.* POST PUBLISHING COMPANY.

Nantucket.   October 26, 1953. — December 31, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Libel and Slander.*

A certain newspaper article, which was published a few days before a primary concerning a retired judge who was a candidate in such primary for nomination as a member of the Legislature and which referred among other things to the respective amounts of his judicial pension and former judicial compensation and to "problems" confronting him, in the event of his becoming a member of the Legislature, "of collecting both a salary and a pension from" the Commonwealth and "of possibly collecting two pensions" from it, was not reasonably susceptible of meaning that he was a candidate with the purpose of seeking to collect from the Commonwealth money he would not be entitled to legally, or of any other defamatory meaning, and as a matter of law was not libellous.

TORT.   Writ in the Superior Court dated November 12, 1952.

A demurrer to the declaration was sustained by *Donahue,* J.

*James C. Roy,* for the plaintiff.

*Francis P. Garland,* for the defendant.

WILLIAMS, J.   In this action for libel the plaintiff appeals from an order of a judge of the Superior Court sustaining the defendant's demurrer to the plaintiff's declaration. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 453.   Therein it is alleged that the plaintiff is a retired judge of the Probate Court for the county of Nantucket and entitled to receive a pension from the Commonwealth of Massachusetts; that he is now practising law; and that on September 13, 1952, when he was a candidate for nomination as representative to the General Court at a primary to be held on September

16, 1952, the defendant published of and concerning him in the Boston Post the following article:

## "PENSION OR PAY UP TO JURIST

### "Judge Poland Must Make Decision on Problem

"For a time yesterday, retired Judge George M. Poland of Nantucket had quite a knotty pension problem. He was confronted, too, with the possible problem of collecting both a salary and a pension from the State. Then, again, he was faced with the distant prospect of collecting, possibly, two pensions. Judge Poland retired last June as Probate Court judge at Nantucket. His base pay was $4000 a year. But Judge Poland, upon retirement, found that his pension would exceed the salary he received for working. Under a special law passed in October, 1951, by the Legislature, Judge Poland could collect three-fourths of his average court salary for the past 10 years. And during the past 10 years, Judge Poland sat many times as judge of probate in Middlesex and Suffolk counties, where the pay is $12,000 a year. He received the higher pay while sitting outside his own Nantucket courtroom. That brought his salary average far above his base pay as probate judge in Nantucket.

### "More Than Base Pay

"Three-fourths of that salary averages about $5600 — or $1600 more than his base pay. But Judge Poland decided recently that he'd like to represent Nantucket residents in the legislature. He became a candidate for the Republican nomination against the incumbent, Cyrus Barnes. A State representative receives $4500 a year. Could he collect both his pension and his salary, if elected, and get a combined pay of $10,000 as a 'working pensioner?' He had his answer to that question last night. State officials said the law specifically states that a person can only draw one salary from the State. He would have to waive either his pension, if elected, or waive his legislative salary. Then

again, Judge Poland had the problem of possibly collecting two pensions. If the present pension law is not repealed and he is elected this year, then re-elect[ed] for two more terms he would be eligible for a pension as a legislator. Under the present controversial pension plan for solons a legislator receives a pension based on his highest salary in the State service or in one of its subdivisions. His pension from the Legislature, if he is elected and wins two more terms after that, would be based on the highest salary he ever received as a jurist. It could run as high, possibly, as $4000 a year.

### "Only One Pension

"Would that amount be applied to his pension from the bench? That knotty problem was quickly unraveled by Chester H. Grant of Gloucester, secretary of the State Retirement Board. No, said Mr. Grant. A person can only collect one pension from the State. So now Judge Poland, if elected, only has some minor problems. He'll have to decide — if he wins the election — whether he'll take his pension or his salary as a legislator. If he is elected and serves six years in the House, and if the present pension system is not repealed at the special session, he'll have to decide which pension he'll eventually take — the one from the bench or the one from the Legislature." It is further alleged that "The intent and meaning of the words above . . . taken together, is that the plaintiff having retired as a judge of the Probate Court with a pension greater than his average annual pay for judicial work, was standing as a candidate for nomination for the office of representative in the General Court for the purpose of claiming and collecting monies from the Commonwealth to which he would not be entitled by law, that the plaintiff was troubled in mind and in doubt about such claim and that as a lawyer he did not know or understand the plain words of G. L. (Ter. Ed.) c. 32, § 91."

To this declaration the defendant demurred alleging among other grounds that the matters contained in the

declaration are insufficient in law to enable the plaintiff to maintain his action.

Words may be found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn, or ridicule, or tend to impair his standing in the community. *Twombly* v. *Monroe,* 136 Mass. 464. *Peck* v. *Wakefield Item Co.* 280 Mass. 451. *Lyman* v. *New England Newspaper Publishing Co.* 286 Mass. 258, 261–262. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 33–34. *Stanton* v. *Sentinel Printing Co.* 324 Mass. 13, 14. *Tobin* v. *Boston Herald-Traveler Corp.* 324 Mass. 478, 487–488. *Aldrich* v. *Boyle,* 328 Mass. 30, 32. A defendant in an action for libel is liable for what is insinuated as well as for what is explicitly stated. *Merrill* v. *Post Publishing Co.* 197 Mass. 185, 193. A demurrer cannot properly be sustained unless it appears that the statement complained of is not reasonably capable of being understood in a defamatory sense to the discredit of the plaintiff in the minds of a considerable and respectable class of the community. *Fahy* v. *Melrose Free Press Inc.* 298 Mass. 267. *Tobin* v. *Boston Herald-Traveler Corp.* 324 Mass. 478. If the privilege of fair comment on the qualifications of a candidate for public office is asserted, it is a matter of defence and ordinarily not open on demurrer. *Robinson* v. *Coulter,* 215 Mass. 566, 571. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34–35. See *Commonwealth* v. *Pratt,* 208 Mass. 553, 559. But where as in the present case it appears from specific allegations in the declaration that the alleged libellous statement respecting a candidate was published in the course of a political campaign, that fact may be considered as a circumstance in determining its probable effect on the community. See *Haynes* v. *Clinton Printing Co.* 169 Mass. 512, 515; *Aldrich* v. *Boyle,* 328 Mass. 30, 32.

The article in question cannot be construed as meaning that the plaintiff was seeking to collect from the Commonwealth money to which he was not entitled nor is it reasonably capable of being so understood. We think that it did carry an intimation that the plaintiff had a financial motive

in his candidacy and was interested in the salary and possible future pension to which he would or might be entitled if elected to the office for which he sought the nomination. There was, however, no suggestion of dishonesty or lack of the candidate's qualifications. See *Sillars* v. *Collier,* 151 Mass. 50, 53. The fact that he had in mind payment for his services was not calculated to injure his reputation in the community or expose him to hatred, ridicule, or contempt. The case is similar in many respects to *Tobin* v. *Boston Herald-Traveler Corp.* 324 Mass. 478, and *Aldrich* v. *Boyle,* 328 Mass. 30, both of which cases were decided on demurrer in favor of the defendant, substantially on the grounds that the published statements did not charge wrongdoing or reprehensible conduct. In the present article there were misstatements of law and fact which served to give point to the problems with which the plaintiff was alleged to be confronted, but had no tendency to render the essential implication of the article defamatory. It may be added that no reference was made in the article to G. L. (Ter. Ed.) c. 32, § 91, and nothing was stated to support the inference, which the plaintiff alleges could be drawn, that as a lawyer he did not understand the meaning of that statute.

*Order sustaining demurrer affirmed.*