ISADORE H. Y. MUCHNICK *vs.* POST PUBLISHING COMPANY.

Suffolk.    November 4, 1954. — March 1, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Libel and Slander.    Pleading, Civil,* Declaration, Demurrer. *Damages,* For tort. *School and School Committee.*

A demurrer to the declaration in an action for libel should not be sustained unless the published words are incapable of a defamatory meaning. [305]

An allegedly false newspaper publication concerning the chairman of the school committee of a large city was susceptible of the defamatory meaning that he conducted disorderly public committee meetings and engaged in disgraceful and insulting behavior toward the superintendent of schools with the unworthy purpose of forcing the superintendent to make a certain nomination against his will, all to the detriment of the teachers and pupils, and might properly be found to be libellous. [306–308]

The point that a newspaper article was privileged as fair comment on a question of public interest was a matter of defence not open to the defendant on demurrer to the declaration in an action for libel based on such article. [308]

In an action for libel based on an allegedly false newspaper publication concerning conduct of the plaintiff as chairman of a school committee, an allegation that the plaintiff, an attorney, lost law business as a result of the publication was proper as a foundation for proof of special damage. [308]

An allegedly false newspaper publication concerning the chairman of the school committee of a large city was susceptible of the defamatory meaning that he acted in his own interest in a manner antagonistic to the best interests of the city and detrimental to the teachers and pupils, and might properly be found to be libellous. [308–309]

TORT. Writ in the Superior Court dated August 3, 1953.

The action was heard by *Hudson, J.,* on demurrer.

*Morris Michelson,* for the plaintiff.

*Chester C. Steadman,* for the defendant.

WILKINS, J. The plaintiff was chairman of the school committee of the city of Boston when the defendant on five successive days beginning December 2, 1952, published concerning him in its newspaper, the Boston Post, an editorial, news articles, and letters. In this action of tort for libel there are thirteen counts, each based on a separate publication. The defendant's demurrer to each count was sustained, and the plaintiff appealed.

The difficulty in this case lies not in the law, which is well settled, but in its application to the facts. A demurrer to a declaration for libel is not to be sustained unless the words cannot be reasonably understood in a defamatory sense, or, to express it in another way, unless they are incapable of a defamatory meaning. The test is whether, in the circumstances, the writing discredits the plaintiff in the

minds of any considerable and respectable class of the community. A publication is defamatory when it tends to injure one's reputation in the community and to expose him to hatred, ridicule, and contempt, an imputation of crime or of bad character or an injury in one's office or business not being essential. *Twombly* v. *Monroe,* 136 Mass. 464, 469. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 454. *Fahy* v. *Melrose Free Press Inc.* 298 Mass. 267, 268–269. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 33–34. *Themo* v. *New England Newspaper Publishing Co.* 306 Mass. 54. *Stanton* v. *Sentinel Printing Co.* 324 Mass. 13, 14. *Tobin* v. *Boston Herald-Traveler Corp.* 324 Mass. 478, 487–488. *Aldrich* v. *Boyle,* 328 Mass. 30. *Poland* v. *Post Publishing Co.* 330 Mass. 701, 704.

1. The first count alleges that on December 2, 1952, the defendant falsely and maliciously published in the Boston Post the following editorial on the first page which was defamatory of the plaintiff and tended to injure the plaintiff in his personal, professional, and official character, he being chairman of the school committee of the city of Boston and an attorney at law:

"The manner in which certain members of the Boston School Committee heckle and insult Superintendent of Schools Dennis C. Haley at school committee meetings constitutes one of the most disgraceful activities in the current life of the city.

"Chairman Muchnick, Dr. Foley and Mrs. Lyons almost invariably team up against the proposals of the superintendent. Mr. Muchnick runs the meetings in a grim manner and displays curtness when he addresses the superintendent and assistant superintendents.

"At the expense of the taxpayers, who have to stand the bill for a public stenographer, the chairman talks incessantly. Last night the committee, by the usual three to two vote, sought to take away from the superintendent the power to nominate teachers and other school department personnel, and they wound up with a proposal that

will require Chairman Muchnick's approval of the expenditure for the replacing of a single pane of glass in school windows.

"Many people in the city believe there is an effort to force the resignation of the superintendent. Could it be that the superintendent's refusal to nominate a certain principal for assistant superintendent has anything to do with the animosity shown to him? . . .

". . . How much longer will the people of Boston put up with the antics of school committee members who revel in disorder and who seldom fall short of insult when dealing with the man under whose charge the future of so many children and teachers depends?

"This city can get along nicely without any little Caesars on the school committee."

The demurrer to this count assigns two causes, one for legal insufficiency and one because of the allegation that the plaintiff was caused "to lose clients and legal matters,"[1] the basis of the latter objection being that the publication does not attack the plaintiff in his professional character as an attorney at law.

We think that there was error in sustaining the demurrer. The count states a cause of action. It could be found that the plaintiff in his office as chairman of the school committee with the unworthy purpose of forcing the superintendent to nominate a certain principal to be assistant superintendent conducted disorderly public meetings, and engaged in disgraceful and insulting behavior, all to the detriment of the school teachers and children of the city. The inference could be drawn that the plaintiff was so far false to the position of great public trust reposed in him as to abuse the powers of his office and to be willing to jeopardize the future in education of "so many children" with the improper objective of forcing a certain appoint-

---

[1] The context of the phrase demurred to is: "as a result whereof the plaintiff was caused to suffer mental anguish and to lose clients and legal matters and was otherwise greatly, severely and permanently damaged, as in his writ alleged."

ment to be made by an unwilling superintendent against his own judgment.

The point that the article was a fair comment upon a matter of public interest and therefore privileged is a matter of defence not open on demurrer. *Robinson* v. *Coulter,* 215 Mass. 566, 571. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 457. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34–35.

The count is not bad because of the allegation as to the loss of law business. The question is not whether the alleged libel, which must be taken to be false on demurrer, reflected upon the plaintiff's qualifications as an attorney, but whether it caused him to lose business. While not essential to stating a cause of action for libel, the allegation is proper to enable him to lay a foundation for proof of an item of damage. Otherwise he would be limited to those damages naturally and necessarily to be expected from the publication. See *Fay* v. *Harrington,* 176 Mass. 270, 271; *Antokol* v. *Barber,* 248 Mass. 393, 395. See also *Craig* v. *Proctor,* 229 Mass. 339 (an action for slander). Loss of clients is not such damage where the publication was not made of the plaintiff in his profession. We adopt the rule in the Restatement: "One who is liable either for a libel or for a slander actionable per se is also liable for any special harm of which the defamatory publication is the legal cause." Restatement: Torts, § 622. Restatement: Torts, § 569, comment c; compare § 575, comment b. Harper on Torts, § 253. See *McCallum* v. *Lambie,* 145 Mass. 234, 238; *Lyman* v. *New England Newspaper Publishing Co.* 286 Mass. 258, 263; *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34.

2. Count 6 alleges that on December 3, 1952, the defendant falsely and maliciously published in the Boston Post the following:

"Certain members of the Boston school committee (Chairman Muchnick, Dr. Foley, Mrs. Lyons), who were elected by the people of Boston to serve their best interests, seem now to be serving their own interest.

"This procedure is seriously affecting the morale of the teaching and administrative personnel of the Boston school system.

"The children of the schools are the ones to suffer from these actions.

"The recent action of the committee in usurping the appointive powers of the superintendent serves as a culmination of a course of action that has gone on too long for the people of Boston to let it continue."

We think that the demurrer to this count should have been overruled. It could be found that here is an allegation that the plaintiff was acting in his own interest in a manner antagonistic to the best interests of the city, all to the detriment of the school children. While the distinction may not be great, we think that this statement falls inside the line bounding defamation territory and not outside as did the statement made during the political campaign in *Aldrich* v. *Boyle*, 328 Mass. 30, 31, 32. The count is not bad because of the allegation that the plaintiff was caused "to suffer injury in his law practice."

3. We think, without quoting them in full, that none of the other counts is good against demurrer. These allegations include trying to increase the committee's powers and reduce the powers of the superintendent; wasting time in meetings; causing unreasonable expense for stenography at meetings; being responsible for delays in repairing school buildings; being arrogant; and, with two colleagues, acting like "little Caesars."

4. That part of the order sustaining the demurrer as to counts 1 and 6 is reversed, and that part of the order sustaining the demurrer as to the other counts is affirmed.

*So ordered.*