OPINION OF THE COURT
Edward J. Greenfield, J.
Remember Eloise, the precocious six-year-old girl of Kay Thompson’s creation who lived at the Plaza? Well, according to a book entitled "Titters”, captioned as "The First Collection of Humor by Women”, and published by defendants, she is now 26, and has grown into a sophisticated, uninhibited and sexy young woman who still lives at the Plaza.
The updated version of Eloise, entitled "Eloise Returns”, is not by the original author, but is credited to Janie Gaynor and Peggy Goldman, who are contributors to the collection of pieces, poems, pictures and parodies designed (with mixed success) to showcase samples of humor by women. Some of it is clever, some of it dull, and some of it in questionable taste, but it is clear that the intent is to be funny. When, however, humor is at the expense of a sensitive person, the right of freedom of expression and the right of privacy and freedom from undue defamation collide. This case raises such an issue.
The plaintiff herein is Alphonse W. Salomone, a flesh-and-blood person who was in real life the manager of the Plaza Hotel for many years, and is now manager of the New York Hilton Hotel. In the original story, he is referred to by six-year-old Eloise briefly. She says: "I am a nuisance in the lobby. Mr. Salomone said so. He is the Manager. I always say *348 'Good morning, Mr. Salomone’ and he always says 'Good morning, Eloise’ ”. Accompanying the text is a drawing of Eloise curtseying, and a genial-looking man smiling, and bowing low.
In "Eloise Returns”, which is obviously a parody of the original, with the text running only four pages, there is also a reference to Mr. Salomone, only this time it is on the cover. On the original cover, a child has climbed up on a chair to scrawl the name "Eloise” with pink lipstick on the mirror above the marble fireplace. On the cover of the updated version, a grown-up young lady has scrawled assorted raunchy graffiti on the walls, and on the mirror above the marble fireplace she has written with pink lipstick (in lettering identical to that on the original cover) the words "Eloise Returns”. Immediately beneath that, in smaller letters, are the words "Mr. Salomone was a child molester!!”
Mr. Salomone has not found the use of his name in this way at all amusing. He is in fact outraged, and he has brought suit to recover $1,000,000 based on his contention that the statement about him on the cover of "Eloise Returns” is libelous per se.
Defendant Macmillan has moved to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7) on the ground that it fails to state a cause of action in that the words taken in context, are obviously a joke, and do not really convey any defamatory meaning. Plaintiff insists that the words are libelous per se, and could not possibly be construed as humorous, and accordingly he urges that the motion to dismiss be denied.
 Plaintiffs complaint does not plead special damages, so unless the language employed be considered libelous per se, the complaint cannot withstand defendant’s motion. (Garfinkel v Twenty-First Century Pub. Co., 30 AD2d 787.) A statement is defamatory on its face if it is clearly damaging to the reputation of the person to whom it relates. Reputation is a fragile shell which may be injured by words which tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons. (Kimmerle v New York Evening Journal, 262 NY 99, 102; Berkson v Time, Inc., 8 AD2d 352, 353, affd 7 NY2d 1007.) The question presented is whether the statement herein cannot possibly be construed as defaming plaintiff, because it is "all in fun”.
*349 Clearly the charge that someone is a "child molester” on its face imputes to an individual a crime involving moral turpitude — the carnal abuse of children. It is a charge that, if true, causes revulsion — for even in a society in which there has been a profound change in sexual mores, the use of children as sexual objects is considered a perversion of the lowest kind. There is nothing more likely than such a charge to create aversion and antipathy and destroy a reputation. It is reported that even in our prisons, with a population teeming with murderers, thieves, rapists and pimps, the child molester is on the lowest rung of the social ladder, and is regarded with scorn by his fellow criminals.
Defendant urges that despite the words themselves, no fair-minded person seeing them in context would seriously believe that the real-life Mr. Salomone was in fact a child molester. "Eloise” was a work of fiction — about a made-up child and what her supposed reactions would be in a sophisticated but actual setting. The name of Mr. Salomone as manager of the hotel was added to lend a dash of verisimilitude to the work. "Eloise Returns” purports to be a parody of the original, echoing some of the phraseology and sentiments of the earlier work, but now through the mouth of a grown-up and thoroughly uninhibited Eloise. In the original she depicts Mr. Salomone as someone who considers her a nuisance. Twenty years later she gets back at him by scribbling that he was a child molester. No one, asserts the defendants, would consider this as a genuine, serious accusation for it is obviously designed to be humorous. Mr. Salomone’s name is not alone on the cover of "Eloise Returns”. Some of the graffiti depicted contain supposedly humorous sexual innuendoes about well-known public figures.
Is there a recognized exception from the laws of libel when words otherwise defamatory are uttered in a humorous context? Of course, common sense tells us there must be. Humor takes many forms — sheer nonsense, biting satire, practical jokes, puns (clever and otherwise), one-liners, ethnic jokes, incongruities and rollicking parodies, among others. Laughter can soften the blows dealt by a cruel world, or can sharpen the cutting edge of truth. Without humor — the ability to recognize the ridiculous in any situation — there can be no perspective. Humor is a protected form of free speech, just as much to be given full scope, under appropriate circumstances, *350 as the political speech, the journalistic exposé, or the religious tract.
The principle is well established that an allegedly libelous statement must be read and understood in the context in which it appears. "Words which, when standing alone may reasonably be understood as defamatory, may be so explained or qualified by their context as to make such an interpretation unreasonable. So too, words which alone are innocent may in their context, clearly be capable of a defamatory meaning and may be so understood. The context of a defamatory imputation includes all parts of the communication which are ordinarily heard or read with it.” (Balabanoff v Hearst Cons. Pub., 294 NY 351, 355.)
If, taken in context, it is unmistakably clear that a statement otherwise libelous is set forth in jest, is unambiguously jocular, and would be regarded by all who read it as goodnatured fun, then it cannot be said that the reputation of the person mentioned has been so undermined as to support a cause of action for libel. (Triggs v Sun Print. & Pub. Assn., 179 NY 144; Lamberti v Sun Print. & Pub. Assn., Ill App Div 437.)
Humor, then, may well be a defense to a suit in libel, but the mere assertion that a statement was meant to be funny does not automatically absolve the utterer. Humor is intensely subjective. Blank looks or even active loathing may be engendered by a statement or cartoon that evokes howls of laughter from another. What is amusing or funny in the eyes of one person may be cruel and tasteless to someone else. There is always a thin line between laughter and tears. Risibility and sensitivity must go hand in hand.
Especially is this true in dealing with parody and satire. Satire employs "irony, derision, or wit in any form to expose folly or wickedness”. (American Heritage Dictionary [New Coll Ed, 1976].) It works through analogy and allusion to achieve recognition of the ridiculous. Its very essence is understatement. Parody, on the other hand, shuns sublety. Its aim is to amuse and expose by imitating life, but larger than life. Its essence is distortion and exaggeration. Hence, like the warped and curved mirrors in a carnival fun house, it depends upon the grotesque for its effects.
Thus, the writer resorting to parody must be wary, for his shafts may miss the mark, and be cruel without purpose, inflicting real hurt where only laughter was intended. "[H]ow- *351 ever desirable it may be that the readers of and the writers for the public prints shall be amused, it is manifest that neither such readers nor writers should be furnished such amusement at the expense of the reputation or business of another. In the language of Joy, C.B.: 'The principle is clear that a person shall not be allowed to murder another’s reputation in jest;’ or, in the words of Smith, B., in the same case: 'If a man in jest conveys a serious imputation, he jests at his peril.’ (Donoghue v. Hayes [1831], Hayes, Irish Exchequer, 265, 266.)” (Triggs v Sun Print. & Pub. Assn., supra, p 155.)
In this case there is a sharp conflict between the contentions of the parties as to whether the work in question is uproariously funny and witty and a clever parody of a well-known work, or whether, as the plaintiff contends, the publication is merely a "collection of obscenity, smut and filth”. It is difficult for a court to impose its own opinions as to the intent and impact of a purportedly humorous work. As stated by Botein, P. J., in University of Notre Dame Du Lac v Twentieth Century-Fox Film Corp. (22 AD2d 452, 455): "[Tjhere is no point whatsoever in disclosing our views as to the artistic merit, good taste or essential decency of the treatment”. Further, he stated (p 458): "[W]e may not import the role of literary or dramatic critic into our functioning as Judges in this case; and so for purposes of the law we may not reach a conclusion that the works of fiction involved in this litigation are not artistic or literary works. * * * Whether [the work] is good burlesque or bad, penetrating satire or blundering buffoonery, is not for us to decide. It is fundamental that courts may not muffle expression by passing judgment on its skill or clumsiness, its sensitivity or coarseness; nor on whether it pains or pleases”.
While the court, in that case, held that the work in question could not be enjoined in equity, it suggested that the remedy of the party who is the butt of the joke is at law, provided that libel can be proven.
This is precisely the kind of libel case suggested as appropriate by the Appellate Division, with the court having been warned not to impose its own values in measuring the work in question. The issue of whether a matter is harmless humor or cruel and vicious derision is peculiarly a judgmental question. Unless a jury has been waived, the court should not intercede as the ultimate finder of the facts. Just as questions of what is truth, what is reasonable, or what is obscene are left to the *352 collective judgment of a group of laymen serving on a jury, so the question of whether a particular statement is nonactionable humor or compensable libel should appropriately be left to the judgment of a jury.
Public figures may justifiably be considered not only subjects of criticism but even calumny, but the same does not apply to persons who have never sought to thrust themselves into the limelight. The parody and satire to which public figures may be subject does not equally apply to private persons. The manager of the Plaza Hotel or the Hilton Hotel, while at a focal point in public activity, does not ordinarily put his private personality under the spotlight for all to see. In such a case, only a jury should make the ultimate determination as to whether the use of a name for poking fun is within legitimate limits or is so inexcusably over the line as to warrant damages. Application of these principles requires that the defendants’ motion to dismiss the complaint be denied, and the matter be determined at a trial.