JAMES D. MYERS, JR. vs. BOSTON MAGAZINE COMPANY,
INC.

Suffolk.   March 14, 1979. — May 29, 1979.

Present: GRANT, ROSE, & KASS, JJ.

*Libel and Slander.*

A magazine's purportedly humorous statement that a television
sports announcer was "[t]he only newscaster in town who is en-
rolled in a course for remedial speaking" was reasonably suscepti-
ble of a factual or literal interpretation, and, therefore, it was error
to dismiss the announcer's libel action for failure to state a claim.
[677-681] KASS, J., dissenting.

CIVIL ACTION commenced in the Superior Court on May
23, 1977.

A motion to dismiss was heard by *Ford, J.*

*Richard K. Latimer* for the plaintiff.

*Joseph D. Steinfield* for the defendant.

ROSE, J. The sole issue on appeal is whether a published
description of the plaintiff, a television sports announcer,
as "[t]he only newscaster in town who is enrolled in a
course for remedial speaking" gives rise to a legally cog-
nizable claim of libel against the defendant publisher. A
majority of the panel conclude that it does.

The plaintiff is a sports news announcer at the Boston
television station WBZ-TV. We assume, without deciding,
as the parties have, that he is a public figure for purposes
of a libel suit under the rule of *New York Times Co.* v.
*Sullivan,* 376 U.S. 254 (1964), and its progeny. In the
September, 1976, issue of Boston Magazine, published by
the defendant, there appeared a one-page item entitled ·
"Best and Worst Sports," a copy of which was appended
to the complaint. Eight sports categories introduced by

various headings frame the central portion of the page, which features sketches of a male in various costumes to match each category. "Sports announcer" is the first category listed, appearing in the upper lefthand corner of the page. Several of the categories and the descriptions thereunder are patently humorous or playful: e.g., "Sexy athlete," "Sports move of the year," "Locker," "Pick-up basketball game," and "Sports groupie." Three categories appear to be straightforward or serious: "Sports announcer," "Local sports book," and "Local ski slopes." The "best" in the latter three categories are described in straightforward and complimentary terms. For example, the "best" sports announcer is described as follows: "Knowledgeable and articulate, he writes his own copy and reads it with the conviction that sports coverage is a serious business." Immediately following is the description: "*Worst*: Jimmy Myers, Channel 4. The only newscaster in town who is enrolled in a course for remedial speaking."

Instituting this action for libel, the plaintiff alleged that the statement was untrue and was made by the defendant knowing it to be false or with reckless disregard for its truth or falsity. The defendant's motion to dismiss for failure to state a claim under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), was allowed, and the plaintiff appeals from the ensuing judgment of dismissal.

Consistent with the liberal civil pleading standards in this Commonwealth, our courts have held that a motion to dismiss for failure to state a claim should not be allowed "unless it appears beyond doubt" (*Nader* v. *Citron*, 372 Mass. 96, 98 [1977]) or "to a certainty" (*Romano* v. *Sacknoff*, 4 Mass. App. Ct. 862 [1976]) that the pleader is entitled to no relief under any state of facts which could be proved in support of the claim. See *White* v. *Spence*, 5 Mass. App. Ct. 679, 683 (1977). See also 5 Wright & Miller, Federal Practice and Procedure § 1357 (1969). The question before us is whether the allegedly defamatory statement can be said as a matter of law to be incapable of

being understood in a defamatory sense. The test is whether the statement is "reasonably capable of being understood in a defamatory sense to the discredit of the plaintiff," *Poland* v. *Post Publishing Co.*, 330 Mass. 701, 704 (1953), "in the minds, not of the court . . . nor of wise, thoughtful and tolerant men, nor of ordinarily reasonable men, but of any 'considerable and respectable class in the community.' " *Ingalls* v. *Hastings & Sons Publishing Co.*, 304 Mass. 31, 33 (1939). See *Twombley* v. *Monroe*, 136 Mass. 464, 469 (1884); *Goss* v. *Needham Co-Op. Bank*, 312 Mass. 309, 310 (1942); *Muchnick* v. *Post Publishing Co.*, 332 Mass. 304, 305-306 (1955); *Mabardi* v. *Boston Herald-Traveler Corp.*, 347 Mass. 411, 413 (1964); *Smith* v. *Suburban Restaurants, Inc.*, 374 Mass. 528, 529 (1978). The statement in this case can be found to be susceptible of defamatory import only if it can reasonably be interpreted as a factual assertion, since a false statement of fact is the sine qua non of recovery for defamation. Cf. *Old Dominion Branch No. 496, Natl. Assn. of Letter Carriers* v. *Austin*, 418 U.S. 264, 283 (1974). "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 339-340 (1974). See *Buckley* v. *Littell*, 539 F.2d 882, 893 (2d Cir. 1976), cert. denied, 429 U.S. 1062 (1977); Restatement (Second) of Torts § 566, Comment c (1977).

In grappling with the problem of construction of language in libel cases, courts have recognized that the line of demarcation between fact and opinion is not a precise one. The United States Supreme Court has held that words used in a loose, figurative sense which are part of the conventional give and take in political controversies are not libelous. See the *Old Dominion* case, 418 U.S. at 284. Nor are words libelous if used merely as "rhetorical hyperbole" or vigorous epithets, such that it is "impossible" for a reader not to understand exactly what was

meant. *Greenbelt Coop. Publishing Assn.* v. *Bresler*, 398 U.S. 6, 14 (1970). In a libel suit brought by a journalist (a public figure) against an author, the court held that since the meanings of certain political labels ("fascist"; "radical right") were debatable, loose and varying, such words were insusceptible to proof of truth or falsity and hence were within the realm of protected opinion and ideas. On the other hand, an allegation that the plaintiff had lied and could be taken to court by several people, implying that he was guilty of libel, appeared on its face to be a factual assertion relating to the plaintiff's journalistic integrity, and hence was defamatory in the constitutional sense. *Buckley* v. *Littell*, 539 F.2d at 894-897. The court stated that "any journalist . . . is entitled not to be lightly characterized as inaccurate and dishonest or libelous," agreeing with the finding of the District Court "that it is 'crucial' to such a person's career that he or she not be so treated." *Id.* at 896-897.

In some cases, however, the characterization of language as either fact or opinion cannot fairly be made by a court as a matter of law. In *Good Govt. Group of Seal Beach* v. *Superior Court*, 22 Cal. 3d 672, 681-683 (1978), the court ruled that denial of the defendants' motion for summary judgment was proper where the allegedly defamatory language could have been understood by the average reader as either fact or opinion, holding that it was for a jury to determine in what sense an ordinary reader would have understood it.

In the present case, it cannot be ruled as a matter of law that the statement in issue could not be understood in a factual and defamatory sense by a considerable and respectable class in the community. Had the defendant written of the plaintiff that he was "the only newscaster in town in need of a course in remedial speaking," the statement would fall clearly within the realm of opinion and ideas, protected in order to advance society's interest in "uninhibited, robust, and wide-open" debate on public issues. *New York Times Co.* v. *Sullivan*, 376 U.S. at 270.

But the statement here is cast in terms of a factual asser-
tion that Myers is "the only newscaster in town *who is
enrolled*" (emphasis supplied) in such a course, and it
would not be "impossible" (*Greenbelt Coop. Publishing
Assn.* v. *Bresler*, 398 U.S. at 14), farfetched or unreasona-
ble for a considerable number of readers to believe that
the plaintiff is in fact taking some sort of remedial speech
training, a factual assertion which substantiates the de-
fendant's opinion of the plaintiff as the "worst" sports
announcer in Boston. The published words, if understood
in a factual sense, as we think they could be, are particu-
larly disparaging to one engaged in the plaintiff's occupa-
tion of news and sports announcing, since they impute to
him the lack of skills necessary for the adequate perform-
ance of his trade. Such an imputation is defamatory in
that it tends to injure the plaintiff in his profession. See
*Buckley* v. *Littell*, 539 F.2d at 894-897; 50 Am. Jur. 2d,
Libel and Slander §§ 104, 106 (1970); 1 Harper & James,
Torts § 5.12 (1956); Restatement (Second) of Torts §§ 573,
580A (1977). Nor is it clear from the context that the
statement could not reasonably be regarded by ordinary
readers as a factual assertion. While the "Best and Worst
Sports" item includes some obviously humorous com-
ments, it also includes apparently serious and straight-
forward appraisals in several categories.

The defendant's argument opposing this conclusion is
that there is only one reasonable interpretation of the
challenged language: it is, in essence, humor. As such, the
argument goes, it is merely an amplification of the de-
fendant's opinion that Myers is the "worst" sports an-
nouncer in Boston, and can only be read in context as a
humorous jibe or as rhetorical hyperbole.[1] We recognize

---

[1] By classifying the statement in issue as hyperbole, the defendant
assumes the very thing to be proved. Hyperbole is defined as an ex-
travagant exaggeration, and depends for its comic effect on the recog-
nition of an obvious incongruity. The statement might be viewed as a
form of irony, a more subtle type of humor, in which the literal and
implied meanings are at variance. The use of irony pays "an implicit

the humorous aspect of the statement regarding Myers as it may be read by some readers. This aspect may be obvious to some. It may be missed by others. The problem we perceive, and the problem we face in this case, is that a humorous statement may appear to present a statement of fact to readers who fail to recognize an implication of irony. Where a humorous statement clearly expresses an opinion, it can be held nonlibelous as a matter of law. See *Yorty* v. *Chandler*, 13 Cal. App. 3d 467 (1970), in which the court held that a political cartoon, portraying the mayor of Los Angeles as a candidate for a straight jacket for believing himself qualified for national office, was not reasonably susceptible to a literal interpretation that he was in fact deranged. As the court observed, "The genius of a well-conceived political cartoon lies in its ability to communicate . . . a statement of editorial opinion . . . ." *Id.* at 471. But where, as here, a purportedly humorous statement is reasonably susceptible to a factual or literal interpretation, we believe a legally cognizable claim in libel has been made out. Hence, the motion to dismiss should not have been allowed. As was cogently stated in *Donoghue* v. *Hayes*, Hayes R. 265, 266 (Ir. Exch. 1831), "If a man in jest conveys a serious imputation, he jests at his peril."

The judgment and the order allowing the motion to dismiss are reversed.

*So ordered.*


KASS, J. (dissenting). I respectfully dissent. My quarrel is not with the authorities cited or the principles to be learned from those authorities. I part company with my

compliment to the intelligence of the reader, who is associated with the knowing minority not taken in by the literal meaning." Abrams, A Glossary of Literary Terms 44 (1957). The risk in comic irony is that readers may not appreciate the unstated ironic meaning and may take the statement literally.

brethren in the application of those principles to the facts before us. In context, I do not see how any reasonable reader could take the purportedly offending sentence as a statement of fact. *Greenbelt Coop. Publishing Assn.* v. *Bresler,* 398 U.S. 6, 14 (1970).

The context of the text is criticism, a compendium of what the magazine considered best and worst in a variety of settings in the Boston scene. Criticism, an expression of opinion, is not defamatory. *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 339-340 (1974). *Steak Bit of Westbury, Inc.* v. *Newsday, Inc.,* 70 Misc. 2d 437, 438 (N.Y. Sup. Ct. 1972) ("On the whole I thought it was a pretty unappetizing group of eating places. *It was mostly all fake food, ground-up schmutz*").

As the majority has observed, the defendant in the case before us tossed garlands and nettles to the best and the worst in a variety of categories. In the category of sports the magazine cited the best and worst: sports announcer, sexy athlete, sports move of the year, local sports book, locker, local ski slopes, pick-up basketball game, and sports groupie. The very subjects bespeak levity and tongue in cheek. The entire text, i.e. the complete expression of the critic's view under the subcategory of worst sports announcer, after identifying the unfortunate winner, consists of one sentence: "The only newscaster in town who is enrolled in a course for remedial speaking." Can one sensibly read this as other than an ironic style of expressing the magazine's opinion or as hyperbole? I do not think so. The next subcategory, sexy athlete, carries on in the same vein. Giving the award to the Bruins, the magazine says: "You'd look like a gargoyle, too, if you'd spent a lifetime fielding pucks with your face." Is this, too, a statement of fact? The art work which adorns the text is in a similarly comic vein. Taking into account this background, I think the majority's reading of the text is the type of close analysis which we said in *Borski* v. *Kochanowski,* 3 Mass. App. Ct. 269, 271 (1975), "is hardly a realistic indication of how this publication would be read . . . ."

That the plaintiff is a public figure, a television sports announcer, makes him particularly fair game for the barbs of the critic. *Solomone* v. *MacMillan Publishing Co.*, 411 N.Y.S.2d 105 110 (Sup. Ct. 1978).

I prefer that the pen of the satirist not be blunted by the blue pencil of the libel lawyer and would affirm the judgment below.