*623 OPINION OF THE COURT
Edward J. Greenfield, J.
The plaintiff in this action alleges that he has been libeled by an article published in Time magazine on October 3, 1983. The article deals with incidents of anti-Semitic violence occurring in the area surrounding Yeshiva University in upper Manhattan. Plaintiff was interviewed by a Time reporter and the following quotation is ascribed to him: "Says Shopowner Mark Weiner T no longer wear my yarmulke [skullcap] when I’m out driving. Now I look over my shoulder to see who’s following me’ ”.
Plaintiff’s complaint alleges the extrinsic facts that he is an Orthodox Jew and a rabbi and that he never told the Time reporter that he removed his yarmulke, since to do so totally conflicts with plaintiffs religious beliefs and observances and that the statement attributed to him that he removed his yarmulke when driving damaged his reputation by causing his neighbors, friends, religious associates and acquaintances to suspect and believe that he is a person of immoral and reprehensible character guilty of violating Orthodox Jewish law.
Defendant moves to dismiss. The parties agree that this court must determine as a matter of law whether the statement is capable of defamatory interpretation. (Matherson v Marchello, 100 AD2d 233, 236.) The court must first determine whether the statement complained of reasonably permits the construction urged by plaintiff (see, Mencher v Chesley, 297 NY 94, 98; Schermerhorn v Rosenberg, 73 AD2d 276, 283-284).
The court must also determine whether the statement is actionable. A writing is actionable if it "tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community” (Mencher v Chesley, supra, p 100), or if the libelous matter "tends to make him be shunned or avoided, or deprived of the friendly association of a considerable number of respectable members of the community although it imputes no moral turpitude to him.” (Brown v Du Frey, 1 NY2d 190, 196, citing Katapodis v Brooklyn Spectator, 287 NY 17.)
Plaintiff seeks to equate the word "community” as tantamount to the small, highly Orthodox Jewish community in upper Manhattan with which he associates. This is too restrictive a view since it would be manifestly unfair and unworkable to require Time, a magazine of nationwide scope with a *624 heterogeneous audience, to consider each small enclave within various communities whenever it writes about a person.
Libel is a warped mirror which gives back a grossly distorted picture of reality to those who view it. But if the mirror is to be deemed faulty, it must present a distorted view to those who gaze upon it squarely and with no eccentric perceptions or preconceptions. If the mirror gives back a fair reflection, it cannot be condemned because some few may think they see figures and shadows not perceived by most.
Like the remarkable ultramagnified perspectives revealed by an electron microscope, a view which focuses wholly on the microcosm carries us away from recognizable reality to magnify imperfections into misshapen nightmare shapes and figures. A publication designed to reach a national audience cannot be judged by the standards of a unique and fractional segment of its total readership. Just as obscenity, if judged by community standards cannot fairly be judged by its impact on a unique or special-minority (Hamling v United States, 418 US 87, 107; Miller v California, 413 US 15, 33), so the impact of an alleged libel cannot fairly be judged if we attempt to slice the community pie too thin.
While it is obvious that a person can only be injured in his community, i.e., with those who know him personally or by reputation, the corollary is also true that a person cannot be injured by the feelings of those he does not know and will never meet. Nonetheless, the words "members of the community” cannot be interpreted in libel law to include only those who know the plaintiff personally and hold like religious beliefs.
The construction urged by the plaintiff, that the statement ascribed to him that he no longer drives wearing a yarmulke means he has given up religious belief for expediency, must be measured by its effect upon the ordinary reader. (See, Silsdorf v Levine, 59 NY2d 8, 13; Everett v Gross, 22 AD2d 257, 258.) The quoted statement does not have to be given such a reading as to imply a ready abandonment of religious beliefs under external pressure. The statement can just as readily be taken to mean that the plaintiff has abandoned a readily identifiable religious head covering while driving in neighborhoods where it might be construed as an invitation to an attack in favor of more nondescript headgear, such as a visored baseball cap or a snap-brim fedora worn over the skullcap. It does not require the reader to conclude that *625 plaintiff now travels about totally uncovered and bareheaded for a yarmulke is not the only acceptable form of head covering, but it is distinctively Jewish. Even driving bareheaded under the circumstances cannot reasonably be construed as implying immorality, nor would the average reader of any "right-thinking person” necessarily hold plaintiff in contempt for doing so. (Cf. Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 379). To ascribe prudence in the face of danger to a person does not expose him to obloquy or contempt, but more likely sympathy or respect for sagacity. The statement does not fall within the category of defamation per se.
In any event, it would not be actionable without allegation or proof of special damages. (Gertz v Robert Welch, Inc., 418 US 323.) The ad damnum seeks the round sum of one million dollars as general damages, and there is no realistic indication that any such special damages could ever be pleaded. The statement here involved is certainly less offensive than the jesting charge of "child molester” which was held, in the absence of allegations of special damages to be dismissible as a matter of law in Salamone v Macmillan Pub. Co. (77 AD2d 501, revg 97 Misc 2d 346). Defendant’s motion to dismiss is granted.